Adam Mernick, Administrator of Estate of Michael Mernick, Deceased, and DeWayne Davis, by Orville Davis, His Next Friend, Plaintiffs-Appellants, v. Ambrose Chiodini et al., and Helen Lindhorst, Administratrix of Estate of Carl Lindhorst, Deceased, Defendants-Appellees.

Term No. 56–M–7.

Fourth District.

October 22, 1956.

Released for publication February 4, 1957.

Walker & Williams, and Robert F. Godfrey, of East St. Louis, for plaintiffs-appellants.

Baker, Kagy & Wagner, of East St. Louis, for defendant-appellee Ragon Russell, Pope and Driemeyer, of East St. Louis, for defendant-appellee Ambrose Chiodini, Frank M. Rain, of East St. Louis, of counsel; Johnson, Johnson & Ducey, of Belleville, for de-

fendant-appellee Helen Lindhorst; Cornelius T. Ducey, of counsel.

PRESIDING JUSTICE SCHEINEMAN delivered the opinion of the court.

This is an action by two plaintiffs, one in a representative capacity for wrongful death, and one, a minor by next friend for damages for personal injuries incurred in an automobile-truck collision.

On August 12, 1954, in daylight, Carl Lindhorst was driving a 1940 Dodge in a southwardly direction along Highway No. 3 just north of Columbia, Illinois. Riding as guests with him were three other teen agers, DeWayne Davis, Michael Mernick and Stanley Hudson. Proceeding in the opposite direction going northwardly were three passenger cars, the lead car being driven by defendant, Ambrose Chiodini. Following these three cars was a two ton truck loaded with 6 tons, or 600 watermelons, and driven by defendant Paul Miller, with whom defendant Hartsil Russell was riding. It is alleged by plaintiffs that at a point near a side road leading to the east called Woodland Lane, defendant Chiodini suddenly applied his brakes, giving no signal other than the flashing of his brake lights; that the sudden application of brakes caused the other passenger cars following to do the same in turn; that the truck driver likewise was caused to apply his brakes and, in doing so, swerved over the center line of the highway; that a collision between the Lindhorst car and the truck thereupon occurred resulting in the deaths of Carl Lindhorst and Michael Mernick and injuries to DeWayne Davis and Stanley Hudson.

The complaint joined as defendants, Paul Miller, alleging negligence in the operation of his truck; Ambrose Chiodini, driver of the lead car, alleging that his sudden application of his brakes was a proximate

251

or contributing cause of the collision; Ragon Russell and Hartsil Russell on the theory they owned the watermelons and were liable on the principle of respondeat superior; and the Administratrix of the Estate of Carl Lindhorst, alleging wilful and wanton negligence of the deceased.

Of these five defendants, Hartsil Russell was voluntarily dismissed by plaintiffs during the course of the trial; not guilty verdicts were returned at the direction of the court in favor of Ragon Russell and Ambrose Chiodini at the close of plaintiffs' evidence; the jury returned a verdict of not guilty as to Helen Lindhorst, Administratrix of the Estate of Carl Lindhorst, and found Paul Miller guilty and assessed damages of plaintiff DeWayne Davis at $40,000 and damages of plaintiff Adam Mernick, Administrator of the Estate of Michael Mernick at $10,000. The judgments entered on the guilty verdicts are not appealed from, nor has a cross appeal been filed by defendant Paul Miller.

Plaintiffs contend that the trial court was in error in directing not guilty verdicts in favor of Ragon Russell and Ambrose Chiodini on the basis that plaintiffs' evidence made out a prima facie case against both said defendants, and the question of their liability should have been submitted to the jury.

As to defendant Helen Lindhorst, Administratrix of the Estate of Carl Lindhorst, plaintiffs contend that the trial court committed error in applying Section 2 of the Evidence Act so as to exclude from the jury's consideration all evidence given by her co-defendants as to her liability.

Considering first the contentions relative to defendant Chiodini, we must start with the proposition that a verdict shall not be directed if there is any evidence which, taken with its intendments most favor-

able to plaintiff, tends to prove the complaint. Seeds v. Chicago Transit Authority, 409 Ill. 566.

Confining our consideration of the evidence in the light of this rule and as applied solely to defendant Chiodini, we find from the testimony of defendant Chiodini himself, testifying under Sec. 60 of the Practice Act [Ill. Rev. Stats. 1955, ch. 110, § 60], that he was driving about 50 m.p.h. along said highway looking for a particular subdivision. As he approached Woodland Lane, the entrance to the subdivision, a guest in his car called his attention to it. He immediately applied his brakes, but was unable to slow down enough to turn into the drive. He then released his brakes and applied them again. He did not see the Lindhorst car approaching him, and did not know how close the car immediately behind him was.

Mr. Hollis, driver of the car immediately behind Chiodini, stated he was travelling 40 or 50 m.p.h. about 50 or 60 feet behind Chiodini; that Chiodini applied his brakes suddenly—a hard brake application; that he in turn had to lay on his brakes pretty hard; that he received no signal from Chiodini other than his brake lights; that Chiodini slowed down very fast to 20 m.p.h.; that both right wheels left the highway before he, Chiodini, "straightened up" and applied the brakes again, slowing down to 5 m.p.h. Hollis was within 12 or 15 feet of Chiodini at this point and it was then he heard the collision. He estimated that the Lindhorst car was going about 50 m.p.h. when it passed by him, with two wheels on the shoulder of the road. He was not sure, but he thought he saw the truck coming from behind about 500 to 600 feet back.

Mrs. Hollis, riding with her husband, stated that she noticed Chiodini's brake lights go on all of a sudden and he eased his wheels off the pavement on the right side. He released his brakes for just a minute and then they went back on. She estimated the speed

of her car and Chiodini's at about 40 m.p.h. She stated that he slowed down first to 20 m.p.h., then to 4 or 5, at which time her car came within 6 or 7 feet of Chiodini's. She stated that the Lindhorst car was travelling straight up the highway going about 40 to 50 m.p.h.

Stanley Hudson, riding with Carl Lindhorst, stated they were going 40 to 50 m.p.h., and had two wheels off the pavement on the shoulder. Also, that he saw the truck 2 feet over the center line.

Hartsil Russell, passenger in the truck, stated they were going 35 or 45 m.p.h. about 75 to 100 feet from the last of the three passenger cars; that he saw the tail lights on the cars ahead go on, and they were stopping awful fast; that the driver of the truck put on his brakes, edged the truck over the center line 1 or 1½ feet, then pulled back in his own lane, at which time he was about 75 feet from said cars. He saw the Lindhorst car off on the shoulder going 70 m.p.h. and sloped over; that the next thing "he hit us" when the truck was 25 feet from last car. The truck was going 15 or 20 m.p.h. at impact.

Two policemen testified that the truck and car in question were both in the southbound lane after the collision and that they were unable to tell the location of the point of impact.

Defendant, Chiodini, argues on the above facts that the collision was not the natural and probable result of his act, but that the independent and intervening acts of Lindhorst in driving 70 m.p.h. and losing control of his car, and of Miller in heedlessly driving over the center line of the highway, were the direct and efficient source of the occurrence.

In support of this theory many cases are cited on proximate cause and the effect of an intervening efficient cause. We agree with the principles set forth in such cases, but we do not believe that they are ap-

254

plicable in this instance. It is true that some witnesses placed the speed of the Lindhorst car at 70 m.p.h., but others estimated it at 45 or 50. One witness placed the truck at 500 or 600 feet back, but he wasn't even sure he saw it; another witness placed it 75 to 100 feet back at the time the brake lights went on.

Some point is made of the fact that Chiodini didn't actually stop his car on the highway. But the negligence charged includes a sudden decreasing in speed without an appropriate signal, and, with the exception that his brake lights went on, even Chiodini admits this fact, that he made a sudden decrease in speed. A sudden slowing may easily have the same elements of danger as a sudden stop, and both come under the same principle of law: "Generally, a motorist intending to stop or suddenly slow down his vehicle must use due care for his own safety and for the safety of others, such as other vehicles following so closely behind him that they may be imperiled by a sudden stop." . . . "a sudden slowing up may amount to a practical stop so as to require the same precautions as would be necessary in case of an actual stop." 60 C. J. S. "Motor Vehicles" Sec. 301.

In the case of Gleason v. Cunningham, 316 Ill. App. 286, two trucks stopped suddenly, the car following likewise stopped and another car then struck the latter car driving it into one of the trucks. On the question of proximate cause, the court said: "He (truck driver) could not help but anticipate that such stopping might probably and foreseeably cause injury to others behind, using this much travelled hard road. There was thus initiated a continuous succession of events linked together and traceable back to the first cause as the proximate cause of the injury. . . . the question of negligence and proximate cause must be determined from the particular facts of each particular case and

255

are not questions of law for the court to determine but questions of fact for the jury."

■■ In our opinion, this principle is applicable here under some versions of the occurrence. Since the testimony varied as to some of the pertinent facts, the trial court was obligated to consider only that evidence which weighed most strongly in favor of plaintiffs, when passing on the motion for directed verdict. Seeds v. Chicago Transit Authority, 409 Ill. 566. The testimony most favorable to plaintiffs, if believed and considered alone, could have been found by the jury to show negligence on the part of Chiodini which was a proximate cause of the collision. Accordingly, the order for directed verdict as to defendant Chiodini must be reversed.

On the question of the liability of Ragon Russell on an employer-employee relationship between him and the driver of the truck, the evidence is confined to two witnesses.

Hartsil Russell stated he is the son of Ragon Russell, that his father raises watermelons on a farm in Charleston, Missouri, that they have hauled watermelons to St. Louis before, and on the way would stop at various places enroute to sell to customers. On the date here in question, his father's truck was not in working condition, so his father made arrangements with Paul Miller, who owned a truck, to haul a load for him from Charleston to St. Louis for $40. He stated that there was something also said about Miller buying the load for $60, and "that is the way I understand it. What he was to do was his business." He went along with Miller and they did stop at one of their old customers prior to the collision.

Paul Miller, testifying under Sec. 60 of the Practice Act, stated he was in the trucking business, and that he was to get $40 from Ragon Russell for hauling the watermelons from Charleston to St. Louis. On cross

256

examination by counsel for Ragon Russell he remembered stating at the coroner's inquest in October, 1954 that Hartsil Russell went with him to help sell the watermelons, that Hartsil was to be paid back $60 that his father had coming for the melons, and that if the melons didn't bring $60, he, Miller, would still have to pay $60.

Plaintiffs argue on these facts that a prima facie case of respondeat superior was made and a jury question presented; that the fact that Russell's son accompanied Miller gives rise to a presumption that the right to control and direct the work was thereby reserved to Russell; and that to establish an independent contract relationship the burden was on Russell to show he had no right of control over Miller.

■ We cannot agree with plaintiffs' contentions. The right to control the manner of doing the work is an important if not the principal consideration which determines whether the worker is an employee or an independent contractor. Ferguson & Lange Co. v. Industrial Commission, 346 Ill. 632.

■ The evidence above outlined neither shows nor tends to show any control or supervision whatsoever in Russell. To base an employer-employee relationship on the mere presence of his son in the truck with Miller is only a hopeful speculation, especially in view of the affirmative testimony of both witnesses pointing to at least an independent contract relationship, or perhaps even a sale of the melons.

We therefore hold that the trial court properly directed the verdict for defendant Ragon Russell.

The trial court admitted the testimony of defendants, Chiodini and Miller, when called as witnesses by the plaintiffs, but on objection of the defendant administratrix of the Estate of Carl Lindhorst, instructed the jury to disregard such testimony as to such latter defendant.

Plaintiffs contend that this was error; that Par. 2, Ch. 51, Ill. Rev. Stat. is not applicable for the reason that no one of the defendants is adverse to the other within the meaning of such statute.

The pertinent part of said statute provides as follows:

"No party to any civil action, suit or proceedings, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf . . . when any adverse party sues or defends as . . . administrator . . . of any deceased person . . . unless when called as a witness by such adverse party so suing or defending . . . ."

Plaintiffs argue that the other defendants have made no claims against the Lindhorst estate and the Lindhorst estate has made no claims against them, and that, therefore, their interests are not adverse. Further, it is stated that by being joined with other defendants the Lindhorst estate is in a better position since it thus has the opportunity to share responsibility rather than be exposed to the full responsibility attendant upon a suit against it alone.

We do not believe these arguments to be pertinent. The fact remains that the Lindhorst estate was joined as a party defendant together with others to answer a charge of alleged liability to plaintiffs. In such suit it was possible for the estate to be found solely liable, completely exonerated, or liable together with one or more others. To the extent that each defendant is interested in avoiding liability by whatever means legally available, including placing the blame on another of them, their respective interests are necessarily adverse. To have the Lindhorst estate attached with responsibility for the collision would be to the advantage of both Miller, the driver of the truck, and Chiodini, whose sudden decrease in speed is alleged to have caused the whole sequence of events,

and they would benefit by a finding which attached the responsibility for the collision upon the Lindhorst estate.

The statute makes no distinction between law and chancery actions, but applies equally to "any civil action, suit or proceeding" and we deem it clearly applicable. The defendants were parties, directly interested and adverse to the administrator. It follows that the trial court did not err in instructing the jury to disregard the testimony of Chiodini and Miller as to the defendant administrator.

The judgment entered on the verdict of the jury finding for the defendant, Helen Lindhorst, Administrator of the Estate of Carl Lindhorst, deceased, is affirmed. The judgment on the directed verdict for Ragon Russell is affirmed. The judgment on the directed verdict for Ambrose Chiodini is reversed and the cause remanded for a new trial as to this defendant.

Affirmed in part and reversed in part and remanded.

CULBERTSON and BARDENS, JJ., concur.