Chrysler Credit Corporation, Plaintiff-Appellant, v. M.C.R. Leasing Co., Inc., and Aurora Chrysler-Plymouth, Inc., Defendants-Appellees, and Northern Illinois Corporation, Intervenor-Appellee.

**Gen. No. 69–87.**

Second District.

December 18, 1969.

Rehearing denied January 6, 1970.

Reid, Ochsenschlager, Murphy and Hupp, of Aurora, for appellant.

O'Brien, Burnell, Puckett & Barnett, of Aurora, for appellees.

PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court.

This appeal is from the granting of a summary judgment.

On December 12, 1968, the Chrysler Credit Corporation, plaintiff, instituted a replevin action against M.C.R. Leasing Company, Inc. (M.C.R.) and Aurora Chrysler-Plymouth, Inc., (Aurora). The petition alleged that M.C.R. and Aurora had possession of some 64 automobiles which were the property of the plaintiff. The writ of replevin was executed and the plaintiff took possession of the automobiles.

Aurora is a corporate authorized dealer for the sale of Chrysler and Plymouth automobiles and M.C.R. is a corporation which engages in the leasing of automobiles. Both of these corporations occupy the same premises and have a common ownership.

On February 21, 1969, after obtaining leave of court, the Northern Illinois Corporation (referred to as defendant herein) filed an intervening petition alleging, inter alia, that it had financed the purchase of automobiles by Aurora, that it had filed a financing statement with the Secretary of State as provided by the Commercial Code (Ill Rev Stats 1967, c 26, § 9–401 et seq.) and that each purchase of a motor vehicle by Aurora, since July of 1968, had been covered by a security agreement. The petition, in addition to setting forth a list of motor vehicles which it financed, stated that they were seized by plaintiff under the writ of replevin, that the defendant had not been paid for said automobiles and that, by virtue of its security agreement, it was the owner of and entitled to the possession of the vehicles so listed.

On January 27, 1969, an order was entered requiring the production of the records of both Aurora and M.C.R.

along with an injunction restraining the agents and officers of said corporations from disposing of any records and requiring them to be made available to the parties for inspection and examination. This Court has disposed of an appeal from this order. (114 Ill App2d 43; 251 NE2d 648 (1969).)

On March 7, 1969, defendant filed a motion for summary judgment supported by supplemental affidavits which, in addition to the matters set forth in the petition to intervene, alleged that none of the vehicles listed and claimed by plaintiff have been titled by the State of Illinois; that defendant was in possession of the manufacturer's certificate of origin covering said automobiles; that the defendant had periodically inspected the automobiles and their certificates of origin, both of which were located at the premises of the two corporations; and that prior thereto the defendant had no knowledge that any person or firm claimed or could claim any interest in the vehicles.

The counteraffidavit filed by plaintiff alleged that it financed operations of M.C.R. and advanced funds to that company for the purpose of allowing it to purchase automobiles from Aurora; that the order for production of records previously entered by the trial court had not been fully complied with and that approximately one-sixth of the records ordered to be produced had been produced for inspection; that the records so far inspected disclosed there were instances in which the files of M.C.R. contained executed applications for title, forms for bills of sale, motor vehicle keys and other indications that M.C.R. had purchased automobiles from Aurora.

The trial court after considering the affidavits, granted the motion for summary judgment and ordered that 27 vehicles be turned over to the defendant. The basis for the order was that the plaintiff failed to comply with the Security Interests of the Motor Vehicle Act (Ill Rev Stats 1967, c 95½, § 3–201 et seq.). This enactment, in

addition to extinguishing the security interest created by a manufacturer or dealer when the vehicle is sold to a buyer in the ordinary course of business, also provides that a security interest is not valid against creditors of the owner unless the application for certificate of title sets forth the name and address of the lienholder and the date of his security agreement. Such security interest is "perfected as of the time of its creation if delivery is completed (to the Secretary of State) within 21 days thereafter, otherwise as of the time of delivery."

The plaintiff argues that the security interest of the defendant ceased when Aurora sold the vehicles to M.C.R. because in addition to the above provisions of the Motor Vehicle Act, the Commercial Code allows a buyer, in the ordinary course of business, to purchase property free of a security interest even though the buyer knows the existence of such interest (Ill Rev Stats 1967, c 26, § 9–307).

The defendant contends that a "sale" is consummated, where delivery is to be made without moving the goods, when the seller delivers the documents of title and then title passes at the time when and the place where he delivers such documents (Ill Rev Stats 1967, c 26, § 2–401(3)(a)).

The discovery procedure previously ordered in the case had not been completed at the time the court ruled on the motion for summary judgment. The affidavits filed by both parties are very general and use all-encompassing terms. It appears that Aurora and M.C.R. conducted their business on the same premises. Whether there was a delivery of the documents of title at the time of the alleged sale cannot be determined from the record before us. The defendant's affidavit claims that the manufacturer's certificate of origin was held by Aurora and that it made periodic inspections of the certificates and vehicles, both being located at Aurora's premises. However, an exhibit attached to the motion states that

the defendant had possession of the certificates. From whom they were received, when or how they came into such possession is not disclosed. This, we feel, is important in determining if a transfer of documents had been made or a sale completed, especially under the circumstances of this case where the alleged purchaser and seller are, for all practical purposes, the same entity.

Whether the plaintiff perfected a security interest in the vehicles under section 3–201 et seq., supra, does not preclude it from establishing a sale of the vehicles from Aurora to M.C.R. but only determines its right of priority to the security involved. On the other hand, if the plaintiff is able to establish that a sale in fact was had as claimed in its affidavit, then the rights and security interest of the defendant have been altered.

 The purpose of a summary judgment proceeding is to determine if there is a genuine triable issue of fact. The right of the moving party must be free from doubt and the affidavits in support of the motion for summary judgment will be strictly construed, while the affidavits filed in opposition thereto will be liberally construed. Nathan v. Leopold, 108 Ill App2d 160, 171–172, 247 NE2d 4 (1969); Ruby v. Wayman, 99 Ill App2d 146, 240 NE2d 699 (1968).

 From a review of the record we conclude that there are genuine triable issues of fact to be determined and therefore the summary judgment must be reversed.

Reversed and remanded.

DAVIS and SEIDENFELD, JJ., concur.