ROBERT J. GUNTERBERG, Plaintiff-Appellant, *v.* B & M TRANSPORTATION Co., INC., *et al.*, Defendants-Appellees.

(No. 59862;

First District (2nd Division)—April 8, 1975.

Frederick J. Sentman, of Reilly and Sentman, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban, & Fuller, of Chicago (D. Kendall Griffith, John D. Cassiday, and Stanley J. Davidson, of counsel), for appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

In a three-count complaint, plaintiff, Robert J. Gunterberg, brought this action to recover damages for injuries sustained as a result of an assault and battery. Count I sought recovery against the three individual defendants, Lewis Hopkins, George Skinner, and Alfred Johnson, for an alleged assault and battery committed upon plaintiff.[1] Counts II and III sought recovery against the corporate defendants, B & M Transportation Co., Inc. and B & M Transport Company, on the theories of a negligent hiring and respondeat superior. The corporate defendants moved for summary judgment on the theory that defendant Hopkins was an independent contractor rather than an employee. From the entry of summary judgment on Counts II and III in favor of the corporate defendants, plaintiff appeals.

In Count I of his complaint, plaintiff alleged that defendant Hopkins was in possession and control of a tractor trailer truck which he had parked on property owned by plaintiff; that in so doing, Hopkins had blocked ingress and egress from plaintiff's business premises; that plaintiff posted several written communications upon the truck requesting that

---

[1] The three individual defendants defaulted and are not involved in this appeal.

the owner or driver remove the truck so that plaintiff could gain access to his business premises; that plaintiff, when he returned to place another notice upon the truck, was severely beaten and kicked to unconsciousness by the three individual defendants; and that, while plaintiff was unconscious, defendant Hopkins attempted to run over plaintiff with the truck, but was restrained by the arrival of police officers.

Count II alleged that defendant Hopkins was an employee or agent of defendants B & M Transportation Co., Inc. and/or B & M Transport Company; that he was a man of extreme and vicious propensities; that the corporate defendants knew or should have known of Hopkins violent character and, in the exercise of ordinary care, should have foreseen that Hopkins would attack and injure persons during the course of his employment.

In Count III, the complaint alleged that on the date and time in question, Hopkins had parked his truck pursuant to the orders of the corporate defendants for the purpose of either unloading or loading freight; that the corporate defendants had instructed Hopkins to park in a place where no parking fees would be imposed; that, at the time of the incident, Hopkins was attempting to protect his position regarding free parking; and that his actions were on behalf of his employers with their direction and consent.

Regarding Counts II and III, the corporate defendants admitted that Hopkins had driven his own tractor to Chicago hauling a trailer owned by B & M Transportation Co., Inc., but denied each and every other allegation.

After issue was joined, the corporate defendants moved for summary judgment on the grounds that defendant Hopkins was an independent contractor in relation to B & M Transportation Co., Inc., and that no contractual relationship existed between Hopkins and B & M Transport Company. In support of their motion, defendants submitted the lease agreement between defendant Hopkins and B & M Transportation Co., Inc., and the affidavit of Gene Bramble, president of B & M Transportation Co., Inc. No counteraffidavits were filed on behalf of plaintiff.

Under the terms of the lease agreement, Hopkins leased a particular tractor to B & M Transportation Co., Inc. Either party could terminate the lease without cause after the expiration of 30 days. The lessor was to pay all maintenance and operating expenses of the tractor, all road and fuel taxes, and reimburse the lessee for all purchases of license plates and permits. The lessor could select other qualified drivers to operate the tractor, but was required to furnish the lessee with a certificate of Workmen's Compensation Insurance covering such drivers. The lessor agreed to carry all the safety devices as required by the Interstate Commerce

Commission, and also assumed full responsibility for compliance with safety regulations insofar as the lessee's trailer was concerned. The lessor was to be paid a variable percentage of the revenue derived from the use of the tractor.

The lessor was also required to submit to the lessee driver's logs upon the completion of each trip; furnish a physician's certificate stating that he is physically fit to perform the duties of a long distance truck driver; identify the equipment as the property of the lessee, paint the tractor red, and keep it in an attractive and clean condition at all times; have his equipment pass the lessee's inspection test after each trip.

The lease could be cancelled if the lessor or his employees violated any of the provisions of the agreement or rules and regulations of the Interstate Commerce Commission or otherwise conducted themselves in a manner prejudicial to the interests of the lessee. Two additional clauses provided:

> "Lessee shall have exclusive possession, control and use to the equipment and assumes complete responsibility in respect thereto during said lease.
>
>        ❊    ❊    ❊
>
> The lessor agrees that he will at all times comply with rules and regulation established by B & M TRANS CO., INC."

In his affidavit, Gene Bramble stated that Hopkins singed the lease in his presence and that no taxes were ever deducted from payment to Hopkins pursuant to the lease. He further stated that the sole contractual agreement was between Hopkins and B & M Transportation Co., Inc., and that he had knowledge that no company by the name of B & M Transport Company had any contractual arrangement with Hopkins on or about the date of the occurrence. Solely on the basis of the lease agreement and Bramble's affidavit, the trial court entered summary judgment in favor of the corporate defendants on Counts II and III.

It is plaintiff's position that the entry of summary judgment was improper because the lease agreement demonstrated as a matter of law that Hopkins was an employee of the corporate defendants rather than an independent contractor. Alternatively, plaintiff contends that the issue raised a question of fact, thereby precluding the entry of summary judgment.

■■ Where the evidence is conflicting or more than one inference can be drawn from the evidence, the question of whether the relationship of master and servant existed at the time of injury is generally for the trier of fact. (*Morgan Cab Co. v. Industrial Commission*, 60 Ill.2d 92, 324 N.E.2d 425.) On the other hand, if the written contract claimed to have established the relationship is the sole evidentiary basis for the

claim, and only one inference may reasonably be drawn therefrom, the question becomes one of law. (57 C.J.S. *Master and Servant* § 617 (1948); *Hartley v. Red Ball Transit Co.*, 344 Ill. 534, 176 N.E. 751.) On the evidence submitted in the instant case, the relationship of the parties must be determined as a matter of law.

In support of his position that Hopkins was an employee as a matter of law, plaintiff asserts that leases identical to the one involved herein have been construed by Illinois Courts as establishing the status of employer-employee, and not independent contractor. We are referred to *Hartford Accident & Indemnity Co. v. Major*, 81 Ill.App.2d 251, 226 N.E.2d 74. In that case, plaintiff sought to recover unpaid insurance premiums from the defendant trucking company. The defendant asserted that the drivers who were covered by the insurance were not his employees, but were independent contractors for whom he was not obligated to purchase insurance.

Similar to the instant case, the drivers owned their own trucks and leased them to the defendant. In arguing that the drivers were, as a matter of law, independent contractors, defendant pointed to the evidence that the drivers could make deliveries by any route they chose; that they could hire other persons to drive their trucks; that they could "trip lease" to other carriers whenever defendant could not arrange jobs for them; that the drivers were also required to pay for repairs, gasoline, oil, tires, equipment, and licenses; and that they did not receive a payroll check from defendant, but received their payment on "truck lease statements."

Notwithstanding the above, the court held that there was a reasonable basis for the finding that the drivers were employees of defendant. In so holding, the court noted the contentions of plaintiff that a paragraph of the lease agreement was equivalent to a provision that defendant had a right to fire the driver; that defendant required the drivers to show how their time was spent while on trips and would withhold payment of money for failure to do so; that drivers could not "trip lease" without first calling defendant; and that defendant told the drivers where to load and unload.

Defendant in the instant case argues that the *Hartford* case is distinguishable for the reason that there was evidence, outside the terms of the lease, which demonstrated extensive control over the manner in which the lessors performed the work. In the present case, the relationship of the parties was submitted solely on the basis of the lease agreement and affidavit stating that the corporate defendant did not withhold taxes from its payment to Hopkins. Since plaintiff failed to file counter-affidavits or present evidence to show that the true relationship of the parties was other than expressed in the lease agreement (see *Hamilton v.*

*Family Record Plan, Inc.*, 71 Ill.App.2d 39, 217 N.E.2d 113), defendant argues that our determination of the propriety of the summary judgment is limited to the matters submitted. See *Fooden v. Board of Governors*, 48 Ill.2d 580, 272 N.E.2d 497.

While we agree with defendant that the *Hartford* decision involved evidence outside the terms of the lease agreement, we nevertheless find it to be persuasive in the case at bar. As a reading of that opinion makes clear, the holding in *Hartford* is not limited to a discussion of the evidence contradicting the terms of the lease. At page 258 of the opinion, the court stated:

> "We find the trial court was correct in its decision for another and more cogent reason—in that Major was a motor carrier of goods in interstate commerce operating under authority of a certificate of license issued by the Interstate Commerce Commission."

Under the Federal statutes (49 U.S.C.A. § 301 *et seq.* (1963)) and rules governing the transportation of goods in interstate commerce by a motor carrier, every lease of vehicles involving interstate commerce "shall provide for exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement."

The lease contract in *Hartford*, as well as the lease agreement in the instant case, contained a provision in accordance with the above quoted Federal rule. By virtue of the Federal regulatory scheme, the court in *Hartford* held that the drivers in question were employees of the defendant-motor carrier. Quoting from *Brown v. L. H. Bottoms Truck Lines, Inc.* (1947), 227 N.C. 299, 304, 42 S.E.2d 71, 75, the court stated:

> "The transportation of goods in interstate commerce by motor vehicles was required to be under the rules and regulations of the Interstate Commerce Commission, and the Brown truck could only have been used in such transportation by the defendant franchise carrier as one of its fleet of trucks under its license plates. Hence it would seem to follow that control of the operation for the period of the lease was given to the licensed carrier, and that the owner-driven truck was in contemplation of law in its employ and the driver for the trip stood in the relationship of its employee * * *."

81 Ill.App.2d 251, 259.

Defendants emphasize that the question of vicarious liability was not at issue in *Hartford*, and argue that the decision should not be extended to the intentional torts of the lessor-driver beyond the operation and maintenance of the vehicle. However, the standards used to determine the status of the relationship are not altered or affected by whether such status arises in the context of Workmen's Compensation coverage or the

law of respondeat superior. (*Hamilton v. Family Record Plan, Inc.*, 71 Ill.App.2d 217 N.E.2d 113.) The contention now asserted by defendants appears to be that defendant Hopkins was not acting within the course and scope of his employment at the time of the assault. This issue, however, was neither raised nor decided below, and we intimate no opinion as to its resolution. The sole basis for granting defendants' motion for summary judgment was that under the lease agreement defendant Hopkins was an independent contractor.

In conjunction with the above argument, defendants assert that our decision in *Louis v. Youngren*, 12 Ill.App.2d 198, 138 N.E.2d 696, is controlling in the instant case. We disagree. As that opinion specifically points out, the I.C.C. rules which impose upon the franchise carrier the obligation of "exclusive possession, control, and use" of the truck and "the complete assumption of responsibility in respect thereto," were not effective at the time of the occurrence there involved, and hence, did not become part of the lease.

■■ The classic and principal test as to whether a contractor is independent or a mere servant depends upon his right to control the manner and method in which the work is to be carried on, independent of supervision and direction by his employer. (*Kehrer v. Industrial Commission*, 365 Ill. 378, 6 N.E.2d 635; *Mernick v. Chiodini*, 12 Ill.App.2d 249, 139 N.E.2d 784.) It is the right of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor. *Franklin Coal & Coke Co. v. Industrial Com.*, 296 Ill. 329, 129 N.E. 811.

■■ Oftentimes, however, it is difficult to apply the principal test in specific cases. Accordingly, various secondary tests are applied which may be indicative of the right to control. Among these are the method of payment, the right to discharge, the skill required in the work to be done, and the furnishing of tools, materials and equipment. (*Henn v. Industrial Commission*, 3 Ill.2d 325, 121 N.E.2d 492.) These indicia of status are not conclusive, but merely aid in determining each case on its own particular facts. *Hedrich v. Borden Co.*, 100 Ill.App.2d 237, 241 N.E.2d 546.

■■■ Admittedly, various provisions of the present lease would, absent other considerations, give rise to indicia of an independent contractor. However, when measured against the totality of the lease provisions, particularly those reserving the right to control to the corporate defendant, we believe that the legal relationship fixed by the parties is that of master and servant. The preeminent test—the right to control—could not be more explicitly fixed than in the following provision:

> "Lessee [B & M Transportation Co., Inc.] shall have *exclusive* possession, *control* and use to the equipment and assumes *complete*

*responsibility* in respect thereto during said lease. Lessee shall insure the leased vehicle for public liability, both bodily injury and property damage." (Emphasis added)

This provision alone, by its very language, establishes an unqualified right to control in the corporate defendant. (See *Gassaway v. Barry* (W.D.N.C. 1954), 123 F.Supp. 670; *Hartford Accident and Indemnity Co. v. Major, supra.*) That the corporate defendant considered the truck under its control is further manifested by the provision requiring that the vehicle be identified as that of the lessee. (*Gassaway v. Barry, supra.*) Moreover, another clause provided that the lessor shall comply with the rules and regulations established by the lessee.[2]

■■ An important, if not necessary, corollary of the right to control is the power to discharge or its equivalent. (*Densby v. Bartlett*, 318 Ill. 616, 149 N.E. 591; *Emma v. Norris*, 130 Ill.App.2d 653, 264 N.E.2d 573.) The lease agreement was of no specific duration, but provided that after 30 days from its inception, it could be terminated without cause upon seven days written notice. However, the lease could be terminated at any time "for cause." The operative phrase—for cause—would occur in the event that the lessor or any of his employees had violated any of the provisions of the lease (including the rules and regulations of the corporate defendant), had violated any of the rules or regulations of the I.C.C., or *otherwise had conducted themselves in a manner prejudicial to the interests of the lessee.*

On its face, we think that the lessee's right to discharge the lessor for any conduct "prejudicial" to its interests is comprehensive in scope. Construing the phrase liberally in favor of plaintiff, it would be "prejudicial" to the lessee should the lessor disobey an order or directive of the corporate defendant. This construction, in turn, bears directly on the test of control. As stated in *Industrial Com. v. Bonfils*, 78 Colo. 306, 308, 241 P. 735, 736:

> "By virtue of its power to discharge, the company could, at any moment, direct the minutest detail and method of the work. The fact, if a fact, that it did not do so is immaterial."

Consequently, from a reading of the lease agreement, we conclude that the relationship established was that of master and servant (*Hartford*

---

[2] Although the rules and regulations of the corporate defendant were incorporated by reference in the lease agreement, they were not submitted with the motion for summary judgment. Accordingly, all inferences arising therefrom must be strictly construed against defendant and liberally construed in favor of plaintiff. (*Chrysler Credit Corp. v. M.C.R. Leasing Co.*, 118 Ill.App.2d 111, 254 N.E.2d 153.) Therefore, we presume that the "rules and regulations" fully particularized the broad right to control reserved to the corporate defendant in the above quoted provision.

*Accident and Indemnity Co. v. Major, supra; Gassaway v. Barry, supra.*), and that the trial court's entry of summary judgment in favor of B & M Transportation Co., Inc. was erroneous.

■■ It is next asserted that the evidence submitted was insufficient to support a summary judgment in favor of the other corporate defendant, B & M Transport Company. We agree. The only evidence supporting the judgment is the affidavit of Gene Bramble, president of B & M Transportation Co., Inc., who stated that "he has knowledge that no company by the name of B & M Transport Company on or about June 6, 1970, had any contractual arrangement with Lewis Andrew Hopkins." No statement was made by affiant establishing his representative capacity for B & M Transport Company, nor was any factual predicate stated in support of the conclusionary averment. The applicable principles are set forth in *Tansey v. Robinson*, 24 Ill.App.2d 227, 236-37, 164 N.E.2d 272:

> "Only well pleaded facts as a defense to an action are taken to be admitted and not defendant's conclusions therefrom. Defendant must show facts entitling it to summary judgment, even if the opposing affidavit is itself insufficient. It is also the rule that the movant's affidavit will be strictly construed and must leave no question of defendant's right to judgment * * *."

The averment by Bramble that he has knowledge that no contractual relationship existed between Hopkins and B & M Transport Co., is a mere conclusion of the affiant, and as such, is inadequate to support the motion for summary judgment.

In light of the foregoing, the judgment of the circuit court is reversed and remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

LEIGHTON and HAYES, JJ., concur.