JOHN E. SCHEDLER, Plaintiff-Appellant, *v.* ROWLEY INTERSTATE TRANSPORTATION CO., INC., Defendant-Appellee.

Second District (2nd Division)   No. 74-150

Opinion filed April 15, 1976.

DIXON, J., dissenting.

Roszkowski, Paddock & Johnson, of Rockford, for appellant.

W. J. Sturgeon, of Dixon, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:
This is an appeal from a summary judgment entered for the defendant in a personal injury case. Dixon, who is not a party to this appeal, owned a tractor which he leased to the defendant, Rowley Interstate Transportation Co., Inc., of Dubuque, Iowa (hereinafter referred to as Rowley). Under the lease arrangement Rowley assigned various loads to be hauled interstate with Dixon's tractor pulling trailers owned by Rowley. These trips were made under Rowley's ICC permit as indicated by indicia attached to Dixon's tractor on each trip.

Dixon was given a trailer load to haul to Connecticut, which he did, under Rowley's ICC permit. Leaving Connecticut, Dixon picked up a cargo for another carrier and brought it back to Chicago on Rowley's trailer. From Chicago Dixon hauled the empty trailer to his home in Savanna, Illinois. The lease between him and Rowley required him to return the empty trailer to Rowley's headquarters after each delivery. The following day Dixon drove the tractor and empty trailer from his home in Savanna to Rowley's headquarters in Dubuque and returned the trailer. Driving his tractor only, Dixon then started on his way home to Savanna. Enroute he stopped to visit a friend in Hanover, then continued on. About

five miles from Savanna Dixon was involved in a collision with the plaintiff, in which the plaintiff suffered personal injuries on account of which he brought suit against both Dixon and Rowley.

■■ The suit against Rowley is based on the so-called "public franchise" rule recognized generally by the Federal courts and in many State decisions in cases where a shipment is made under interstate commerce certificates. The rule creates an exception to the familiar doctrine of nonliability for acts of an independent contractor and is stated in the Restatement (Second) of Torts §428, at 420 (1965), as follows:

> "An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."

The rule has been recognized and its principles adopted in several Illinois cases, *viz., Louis v. Youngren,* 12 Ill. App. 2d 198; *Hartford Accident & Indemnity Co. v. Major,* 81 Ill. App. 2d 251; *Gunterberg v. B & M Transportation Co.,* 27 Ill. App. 3d 732.

■■ Generally speaking, one employing an independent contractor is not vicariously liable for such contractor's separate and independent tort committed in the performance of the work (*Gomien v. Wear-Ever Aluminum, Inc.,* 50 Ill. 2d 19), but as indicated above, an exception to this doctrine may apply in those cases where the work or activity requires a public franchise to carry it on. Conceding, however, that Illinois law recognizes the exception as applying to a lease of equipment under an ICC permit, we are of the opinion that the facts of the present case do not come within the exception. It will be noted that the rule as worded in the Restatement specifically refers to "liability for physical harm caused to \* \* \* others by the negligence of a contractor employed to do work *in carrying on the activity.*" (Emphasis added.) While Illinois law on this point is not bound by the Restatement of the Law of Torts, we think it fair to say that Illinois has not broadened the "public franchise" doctrine beyond the Restatement. Therefore, the decisive point to be resolved here, is whether at the time of the collision, Dixon, the lessor, was "carrying on the activity" of the lessee, Rowley. If he was not, vicarious liability would not apply to make Rowley liable.

A point is made by the plaintiff that the lease in this case provided that:

> "[T]he leased equipment under this agreement is in the exclusive possession, control and use of the authorized carrier lessee and that the lessee assumes full responsibility in respect to the equipment it is operating, to the public, the shippers and the Interstate Commerce Commission."

Since the lease was a continuing one under which Dixon would use his tractor to haul for Rowley anytime Rowley designated a load as being ready for him, it is apparently the plaintiff's theory that wherever Dixon might use his tractor and for whatever purpose, it was, by the terms of the lease, in the exclusive possession, use and control of Rowley until the lease arrangement was actually terminated. However, the testimony of Dixon established that he was not in any sense an employee of Rowley, his pay was based solely on a certain percentage of the gross load for each trip and he was paid for each trip on that basis; Rowley did not tell Dixon what hours to keep or what routes to take, nor deduct any withholding tax from his payments; nor did Rowley have any responsibility for maintaining the equipment. More important still, Dixon testified that he was at liberty to haul for others when and if he wished to do so. He testified he regarded himself as being self-employed. He also testified that his vehicle was only leased to Rowley going east and that he often carried for another carrier returning west and that during such trips the tractor was "trip leased to another company," whom he contacted through an independent broker. In answer to the question (on deposition): "[B]y virtue of your lease with Rowley whenever Rowley had goods to be shipped from here east or in other directions you were obligated to ship for them, were you not?" Dixon answered: "If I wanted the load, yes."

The net effect of this testimony, it appears to us, was to establish that while there was an open-end leasing arrangement for Dixon's tractor between Dixon and Rowley, Rowley did not have the exclusive possession, use and control of the tractor recited in the lease, except during an actual trip for Rowley.

In the Illinois cases we have cited where the liability of the lessee-carrier was derived from the operation of a leased vehicle under an ICC franchise, the lessor-owner was actually engaged in the business of the carrier at the time of the incident giving rise to the liability. Thus the situation was clearly within the parameters of the language of the Second Restatement of Torts quoted above, since there was a direct relationship between the accident and the "carrying on of the activity" authorized by the franchise.

■■ The plaintiff contends the same is true in the case before us. He argues that since the lease required Dixon to return the trailer to Rowley's headquarters in Dubuque and since Dixon's home was in Savanna, the parties contemplated that Dixon would have to drive the tractor to Dubuque and then return it to Savanna, therefore, the return trip to Savanna was a necessary part of the whole trip, hence covered under the lease. We do not agree. While it is obvious that the parties knew that Dixon would drive his tractor "bob tail" back to Savanna after he had returned the trailer to Dubuque, this obvious fact is not sufficient to fasten

liability on Rowley under the doctrine whereby the operator of leased equipment under a public franchise such as an ICC permit binds the lessee carrier for the lessor's negligence. The so-called "public franchise" rule extending the carrier's liability is a salutary one based on sound public policy but it extends only as far as logic and justice require. In this case, after returning the trailer to Dubuque, Dixon was at liberty to do as he pleased—he was certainly not required by the terms of the lease to return straight home to Savanna—he could have gone north, south or west from Dubuque and could have pulled a trailer load for some other carrier. He could have housed the leased tractor in Dubuque and returned in another vehicle or by public transportation to Savanna. Therefore, to hold that the liability of Rowley continued after Dixon left Rowley's headquarters with his tractor alone, on his way home and under no duty to Rowley would, we think, be an unwarranted and unintended extension of the rule in question. Rowley's franchise is not required for Dixon to return his "bob tail" tractor to his own home in Savanna, nor is it logical or just to require the carrier (Rowley) to extend its public protection to Dixon while he is doing so.

We recognize the justice of continuing the carrier's liability while the trailer is attached to the tractor and being returned to the carrier, even though the load has been delivered and the trailer is empty. This is part of the lease and it has been so held in several cases. (See *American Transit Lines v. Smith* (6th Cir. 1957), 246 F. 2d 86, *cert. denied*, 355 U.S. 889, 2 L.Ed. 2d 188, 78 S. Ct. 261.) On the other hand, in *Stevens v. Deaton Truck Line, Inc.* (1951), 256 Ala. 229, 54 So. 2d 464, even though the owner-lessor sustained a servant relationship to the defendant-carrier, the carrier was held not liable for the owner-lessor was not acting within the scope of his authority at the time of the collision. In our opinion, Dixon, the lessor-owner here, was no longer acting within the scope of his authority under the ICC franchise when, having completed the trip lease and returned the empty trailer, he left for his home in Savanna with his unattached tractor. At that time he was no longer carrying on any activity on behalf of Rowley.

■■ The plaintiff invokes an analogy to certain Workmen's Compensation cases which have held an employee to have been covered as being in the course of his employer's business while enroute to or from his place of employment. Thus, in *Sjostrom v. Sproule*, 33 Ill. 2d 40, where the employee was enroute to work, it was held he was still under the protection of the Workmen's Compensation statute. However, this case is clearly an exception to the general rule in such cases (see *Public Service Co. v. Industrial Com.*, 370 Ill. 334; *United Disposal & Recovery Co. v. Industrial Com.*, 291 Ill. 480). As the *Sproule* case itself indicates, in that case the coverage under Workmen's Compensation was determined

under the special circumstance that the employee was required to travel from his home in Chicago at the request of the employer to a construction site in Bradley, Illinois, which was not his permanent and usual place of employment. In the rare case where an employee has been held to be covered under the Workmen's Compensation statute while on his way home from work there was a causal connection between the place of the accident and the employer's premises or the nature of the work. (See *Schafer v. Industrial Com.*, 343 Ill. 573.) The plaintiff cites *Christian v. Chicago & Illinois Midland Ry. Co.*, 412 Ill. 171, as favorable to his cause. Actually, however, the court held in that case that the plaintiff was *not* in the course of his employment since his employment did not expose him to any greater risk at the point of the accident than any other member of the public would have been exposed to at the same spot, hence the nature of the employment had no bearing on the risk.

In any event, we do not consider cases under the Workmen's Compensation statute as being analogous to the situation here since the Workmen's Compensation statute is a special statute designed for the protection of the working man and questions of coverage thereunder are somewhat broadly construed. Even so, neither the cases cited by the plaintiff nor those we have found elsewhere seem to be helpful to the plaintiff on the question of continuing coverage after leaving the employer's premises.

■■ The doctrine involved here is founded on public policy and is not to be construed narrowly so as to defeat its purpose of protecting the general public. This consideration, however, does not relieve the plaintiff of his burden of proving that the negligent driver was acting in a relationship to the defendant carrier since that is what makes the doctrine applicable. All the plaintiff proved in this case was that Dixon was on his way home after dropping off the Rowley trailer pursuant to a trip lease arrangement between the parties. We do not consider these facts sufficient to establish liability under the doctrine of derivative liability invoked by the plaintiff based on the ICC franchise.

However broad the vicarious liability of the carrier may be where the owner of the vehicle is operating under the carrier's franchise, we think it does not extend beyond the point where the owner-lessor is no longer carrying on the carrier's business activities. Based on the evidence here (including the lease), we are of the opinion that the activity covered by the lease terminated when Dixon, the owner-driver of the leased tractor, returned the empty trailer to the Rowley terminal in Dubuque. The interstate carriage for which Rowley's franchise was necessary was ended at that point. At the time of the injury the owner-driver (Dixon) was using his tractor for transportation to his home—a mission of his own, for his

own benefit, and in no way advancing or having any connection with the business of Rowley.

We do not consider that the fact that the ICC decals were still attached to the tractor at the time of the accident as being significant under the circumstances of this case. They should have been removed and were required by the lease to be removed after the trip terminated but the fact that they were not is not sufficient to extend liability where it would otherwise not exist.

The judgment of the trial court is affirmed.

Judgment affirmed.

T. J. MORAN, P. J., concurs.

Mr. JUSTICE DIXON dissenting:

The ICC rules require a written contract and require that such contracts vest exclusive possession of, and responsibility for, the equipment in the authorized carrier during the rental, the life of which must exceed 30 days when the driver is the owner. The rules abolish one-way and trip leasing. *American Trucking Associations, Inc. v. United States*, 344 U.S. 298, 308, 97 L.Ed. 337, 354, 73 S. Ct. 307; *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 428, 46 L.Ed.2d 169, 177, 96 S. Ct. 229, 234.

In compliance with the rules, Rowley used a standard leasing contract which provided for *exclusive possession*, use, *control* and also *complete assumption of responsibility to the public* during the life of the lease. The lease was in effect on the date of the accident.

The driver, lessor Dixon, had no public liability insurance of his own and had no Illinois certification of any sort. He could not have legally moved this truck from his home in Savanna, Illinois, unless he was in the service of Rowley. (Ill. Rev. Stat. 1971, ch. 95½, par. 18—100 *et seq.* especially pars. 18—701, 18—702.) Rowley, by virtue of the lease knew that this truck had an Iowa license. Rowley, further, at the inception of the lease in June had plastic signs glued to the truck stating that the truck belonged to Rowley. These signs were never removed at any time prior to the accident.

The leasing contract here creates a master-servant relationship. (*Gunterberg v. B & M Transportation Co.*, 27 Ill. App. 3d 732, 738, 739.) It is not essential that the master's control be exercised if he in fact has the power of control. It is the right of control, not the fact of control that is the principal factor in distinguishing a servant from an independent contractor. *Gunterberg*, at 738; Comment to IPI 2d §50.05 (1971); *M.W.M. Trucking Co. v. Industrial Com.*, 62 Ill. 2d 245, 254-55, 342 N.E.2d 17, 22.

Standards used to determine the relationship are not altered or affected by whether such status arises in context of Workmen's Compensation coverage or the law of respondant superior. *Gunterberg.*

When Rowley calls and says bring the truck it seems to me that Rowley has a special interest in having the vehicle and the employee Dixon transported to Dubuque. Annot., 52 A.L.R. 2d 350, 360, §5 (1957); 8 Am. Jur. 2d *Automobiles and Highway Traffic* §630, also §568 (1963).

Further, when the master furnishes transportation (as here by virtue of the lease) there is an exception to the general rule which is as well established as the rule itself and the employee may be deemed to be on duty during the transportation. *Kancevicius v. Moyer,* 132 Ill. App. 2d 86, 88.

I would reverse the judgment of the trial court.