ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff-Appellant,
v. ROBERT U. FRANKART *et al.*, Defendants-Appellees.

Third District   No. 75-452

Opinion filed December 29, 1976.

McConnell, Kennedy, Quinn & Morris, of Peoria (R. Michael Henderson, of counsel), for appellant.

Westervelt, Johnson, Nicoll & Keller, of Peoria (Robert D. Jackson, of counsel), for appellee Wilson Freight Company.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This appeal is from the judgment of the Circuit Court of Tazewell County finding in favor of the defendants, Robert Frankart, Wilson Freight Company, Elijah Blake and Greater Peoria Mass Transit District, and against plaintiff, St. Paul Fire and Marine Insurance Company, in a declaratory judgment action to determine the coverage of an insurance policy issued by plaintiff to defendant, Frankart.

Defendant-appellee, Elijah Blake, sued Robert Frankart and Wilson Freight Company for damages to compensate him for bodily injuries allegedly sustained in an accident which occurred on June 6, 1974, at the intersection of the west ramp for I-74 and the 700 block of East Washington Street in East Peoria, between a tractor-trailer driven by Frankart and a bus operated by defendant, Greater Peoria Mass Transit District. The latter defendant brought an action against Frankart and Wilson to recover property damage to its bus allegedly caused by the accident.

This appeal is from the collateral action by St. Paul seeking declaratory relief concerning the coverage of its policy. The only issue on this appeal is whether the trial court erred in declaring that plaintiff, St. Paul Fire & Marine Insurance Company, had the duty to provide coverage for the occurrence in question to defendant, Frankart.

There was in effect on the day of the accident an endorsement to the policy issued by plaintiff to defendant, Frankart, which reads as follows:

"It is agreed that such insurance as is afforded by the Policy for Bodily Injury Liability * * * with respect to any automobile described below, or designated in Policy, as subject to this endorsement, does not apply * * *

* * *

(b) While the automobile or any trailer attached thereto is used to carry property in any business;

(c) While the automobile is being used in the business of any person or organization to whom the automobile is rented.

Description of Automobile:

1967 Peterbilt D/tractor S #23478"

Plaintiff argues that by reason of this endorsement, coverage is excluded for any claims arising out of the occurrence in question. Plaintiff argues both that defendant, Frankart, was Wilson's employee rather than an independent contractor, and that Frankart was acting in Wilson's behalf and for his benefit. Part of its argument is that the limited coverage provided by St. Paul is evidenced by the low premium charged. The premium was $61 per year for bodily injury liability and $60 per year for property damage liability.

The determining factor in the instant case is whether Frankart was acting in Wilson's business and for his benefit. The evidence shows Frankart was the owner of the tractor-trailer and a party to the lease agreement with Wilson, which purports on its face to reserve to Wilson the right to control the manner, means and details of and by which the driver of Frankart's equipment performs his services, as well as the ends to be accomplished.

After hauling a load for Wilson from Pennsylvania to Tulsa, Oklahoma, under Wilson's ICC Permit, Frankart called Wilson's terminal in Granite City, Illinois and determined no load was available to haul back in the direction of the home terminal in Cleveland, Ohio. Frankart testified he was hauling the empty trailer back to his home in Findlay, Ohio, via East Peoria, Illinois, where he intended to buy fuel and to try to contact another carrier to sublease or trip lease a load back to Ohio. He testified it was his custom to take this route because he could get a better price for fuel in East Peoria, and furthermore, it was the custom and practice between Wilson and the owner-operators that the driver chooses his own route and the places he buys fuel and eats and sleeps. The crux of plaintiff's argument is that the insurance policy between it and Frankart would not afford coverage while the vehicle was being used in the job of any person or organization to whom it is leased. There is no dispute that there was in effect at the time of the accident in question an endorsement to plaintiff's policy, which did exclude coverage under such circumstances. The entire dispute on this appeal is whether at the time of the accident Frankart's tractor-trailer was being used in the job of Wilson, to whom it was leased.

■■ We recognize the principle that a common carrier is not at all times liable for the negligence of its drivers-lessors, but do not believe it is applicable to the case at bar. (See *Wilcox v. Transamerican Freight Lines, Inc.*, 371 F.2d 403 (6th Cir. 1967), *cert. denied*, 387 U.S. 931, 18 L. Ed. 2d 992, 87 S. Ct. 2053, and *Gackstetter v. Dart Transit Company*, 269 Minn. 146, 130 N.W.2d 326 (Minn. 1964).) This case must be decided in light of the ICC regulations which cover the leasing of owner-driven tractors for use in the business of franchised carriers engaged in interstate transportation. One such regulation requires a written contract having a minimum duration of 30 days, that copies of the lease be carried in the vehicle, that the vehicle be safety inspected by the carrier, that the carrier be properly identified on the tractor by name and by ICC operating authority number, and that proper records be maintained. The lease required by ICC regulations must provide for the exclusive possession, control and use of the equipment and for the complete assumption of responsibility in respect thereto by the lessee for the duration of the lease. The validity of these regulations and the practices they were designed to curb are discussed at length in *American Trucking Associations, Inc. v. United States*, 344 U.S. 298, 97 L. Ed. 337, 73 S. Ct. 307. The main thrust of the regulations is to prevent the carriers from escaping liability by contending their lessor-drivers were independent contractors rather than employees. The lease entered into between Wilson and Frankart complied with the requirements of the ICC regulations and accordingly,

Wilson had, by the terms of this lease, exclusive possession and control of Frankart's vehicle.

■■ The enactment of the ICC regulations does not destroy the general principle contended for by the defendant, Wilson, that a carrier is not always liable for the negligence of its lessor-driver. However, the intent of these regulations and the case law involving these regulations is clear that the carriers cannot escape liability by contending their lessor-drivers are independent contractors. Although we recognize the carrier is not always liable, we also recognize there must be a showing the driver was not acting for the benefit of the carrier.

Wilson cites *Schedler v. Rowley Interstate Transportation Co., Inc.*, 37 Ill. App. 3d 433, 346 N.E.2d 74, in which the court held the lessor-owner of the tractor was no longer acting within the course of his authority under the ICC franchise. Having completed the trip lease and returned the empty trailer, he left for his home, stopping on the way to see a friend. Continuing home, he was involved in a collision while driving only the tractor unit. Based on the evidence, including the lease, the court held the activity covered by the lease terminated when the owner-driver of the leased tractor returned the empty trailer to the carrier's terminal. The court considered that the interstate carriage for which the carrier's franchise was necessary was ended at that point. At the time of the injury the owner-driver was using his tractor for transportation to his home, which the court considered a mission of his own, for his own benefit, and in no way advanced or had any connection with the business of the carrier.

■■ Justice Dixon, who dissented in *Schedler v. Rowley Interstate Transportation Co., Inc.*, 37 Ill. App. 3d 433, 346 N.E.2d 74, would have extended the liability of the carrier to the facts of the case beyond the delivery of the trailer to the yard. The case itself fails to support Wilson's position because by implication it recognizes that the leased unit is operating in the lessee's business at least until the unit returns to the lessee's dock. Although the court held the carrier was not liable under the circumstances of that case, it did discuss the "public franchise rule" recognized by Federal courts and many State courts, where a shipment is made under interstate commerce certificates. This rule creates an exception to nonliability for the acts of independant contractors and is stated in the Restatement (Second) of Torts (1965), section 428, page 420, as follows: "An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the

activity." This rule is recognized in Illinois. See *Louis v. Youngren*, 12 Ill. App. 2d 198, 138 N.E.2d 696, and *Gunterberg v. B&M Transportation Co.*, 27 Ill. App. 3d 732, 327 N.E.2d 528.

Frankart testified he intended to buy fuel in East Peoria where he could get a better price and that the route that he was taking back to Ohio was the customary route he had taken in the past. There was also testimony it was Wilson's practice to allow owner-operators to choose their own routes, the places they bought fuel, and the places they ate and slept. Furthermore, it is of benefit to Wilson and other carriers that the owners-drivers attempt to secure trip-leases, without which, Wilson and the other carriers would be forced to purchase all of their own equipment. Such equipment would be sitting idle at the terminals when the carriers had no freight for the equipment to haul. The allowance given to owners-lessors to seek trip-leases is an economic benefit to the carriers. In the instant case Frankart had not been able to obtain a trip-lease at the Granite City terminal and was continuing back home in the general direction of Wilson's home terminal with the trailer attached.

■■ The empty return of a tractor-trailer is part of the original activity on the behalf of the carrier. (*American Transit Lines v. Smith*, 246 F.2d 86 (6th Cir. 1957), and *Hodges v. Johnson*, 52 F. Supp. 488 (W.D.Va. 1943).) In *American Transit Lines* the court found the owner-operator was, at the time of the collision, engaged in the business of the carrier. The tractor-trailer was owned by the operator and had on each door permanent decals carrying the name of the carrier and its ICC and Ohio Public Utilities Commission numbers. The operator had, on occasion, with permission of the carrier, hauled for others. On the day of the accident, he was returning from Hammond to Cleveland after hauling a load for the carrier to Hammond. His truck was empty and at the time of the accident the tractor was being operated in the general direction of the carrier's terminal. The lease agreement in that case between the owner-operator and carrier was not a "long term agreement," as in the instant case, but was a "trip lease," which the owner-operator admitted covered only the one-way trip from Hammond to Cleveland. The court cited the *Hodges v. Johnson* case to the effect that it would be absurd to say the responsibility of the carrier should attach while the truck is proceeding on its journey loaded, and should not attach on the return journey while empty. The court held both the journey and return journey were necessary parts of the same trip, and the whole trip was undertaken under the authority of the franchise.

■■■ Since we hold the evidence shows Frankart was "carrying on the activity of Wilson," his activity fell within the exclusion endorsement of plaintiff's policy. Accordingly, the trial court erred in holding plaintiff

was under a duty to provide the coverage for the occurrence in question and to indemnify and defend defendant.

For the foregoing reasons, the judgment of the circuit court of Tazewell County is reversed and remanded with instructions to enter judgment on the amended complaint in favor of plaintiff and against the defendants.

Judgment reversed and remanded with instructions.

STENGEL and BARRY, JJ., concur.