Jeffrey J. GRIMES and Lloyd R. Gibbs, Appellants,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY/NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellee.

Court of Appeals of Kentucky.

Aug. 23, 1985.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court April 1, 1986.

Gina L. Nutter, Harry P. Hellings, Jr., Covington, William J. Wehr, Newport, for appellants.

Kurt A. Phillips, Covington, for appellee.

Before CLAYTON, DUNN and Mc-DONALD, JJ.

McDONALD, Judge:

This is an appeal from the judgment of the Kenton Circuit court which summarily dismissed all claims of the appellants, Lloyd Gibbs and Jeffrey Grimes, against the appellee, Nationwide Mutual Insurance Company/Nationwide Mutual Fire Insurance Company.

On January 10, 1981, Gibbs, the owner/operator of a 1970 International diesel tractor, collided with the vehicle operated by Grimes on I–75 near Covington, Kentucky. At the time of the accident, Gibbs' tractor was under a permanent lease to Watkins Trucking Company. When not being used by Watkins, however, Gibbs would secure "trip leases" from other carriers, all with Watkins' knowledge. It is undisputed that on the day of the accident Gibbs was returning to his home in Uhrichsville, Ohio, after having completed such a trip lease for Thunderbird Trucking Company. This lease had terminated on January 6, 1981, when Gibbs unloaded his cargo in Houston, Texas. Despite attempts to secure a load for the return trip, Gibbs was "deadheading," that is, pulling an empty semitrailer, when he collided with Grimes. At the time he was using Watkins' I.C.C. number with permission and pulling a trailer he had leased from Watkins.

In December, 1982, Grimes filed a complaint against Gibbs in the Kenton Circuit Court seeking compensation of $50,000 for his injuries. Gibbs was served through the Secretary of State's office on January 28, 1983, and promptly gave the summons to his insurer, the appellee. Nationwide had previously issued Gibbs a business auto liability insurance policy covering the tractor involved in the accident which was in force on the day of the accident and which contained the following exclusion in its endorsement, CA–2309: "The insurance does not apply: (a) while the automobile is used to carry property in any business; (b) while the automobile is being used in the business of any person or organization to whom the automobile is rented."

According to Dale Hill, Nationwide's agent, Gibbs had promptly given notice to

his insurer of the accident and had fulfilled all his obligations under the policy. We note that Hill is the same agent who serviced the policy and was aware of Gibbs' lease arrangement with Watkins and his policy needs. Nevertheless, on February 14, 1983, three days before an answer was due and over two years after Nationwide was first notified of the accident, Nationwide informed Gibbs by mail that it would neither provide coverage nor a defense under its policy. The letter, which Gibbs received two days later (one day before the default matured), contained in part the following:

> Our coverage is Dead Head (CA–2309), and does not come into play while your vehicle is being used on *any* business. For the above reason, and others which may become known upon further investigation, we must respectively deny coverage. As the above Answer Date is imminent, it is imperative that you obtain an attorney of your choice and at your own expense to respond so that a Default is not awarded against you. We are sorry we cannot arise to your defense.

Gibbs did not obtain counsel in Kentucky to represent him in the tort action and a default judgment in the amount of $45,000 was entered against him in favor of Grimes. Gibbs assigned to Grimes any and all claims he had against Nationwide with the exception of his cause for gross, willful and wanton negligence. The two then commenced the instant action on January 16, 1984, seeking both compensatory and punitive damages, alleging (1) that Nationwide breached its contract by failing to defend Gibbs or provide coverage under its policy, (2) that Nationwide was negligent in failing to give timely notice of its decision not to provide coverage or a defense, and (3) that Nationwide's actions and inactions toward its insured, Gibbs, amounted to willful and wanton negligence.

The trial court, in granting Nationwide's motion for summary judgment, determined that Gibbs' activity at the time of the accident fell within the policy's exclusion. It further concluded that as there was no coverage owed, Nationwide had no duty to defend Gibbs. Finally, the trial court reasoned that Gibbs did not have a viable bad faith claim against Nationwide as Gibbs had time to prevent a default judgment from being taken against him and because the judgment was not in excess of the policy limits. These determinations are before us on review.

■ As this case was disposed of by summary judgment, thus requiring no further preparation of the record already compiled by the circuit court clerk, it was designated by this court as one appropriate for review by our Special Appeals Panel. This panel was authorized by our Supreme Court, by order on April 17, 1985, and is designed to expedite those cases in need of a quick resolution, i.e., child custody cases, to handle cases that concern a single issue or issues in areas of well established case law, or cases, as the one before us, and appeals from administrative agencies, where no extensive part of the record remains to be transcribed or prepared. In order to carry out the purposes for which the panel was designed, this Court reviews the record and then conducts an informal informational hearing before a three-judge panel, without briefs and without formal oral argument.

Unhappy with its designation as a special appeal, the appellee has moved, subsequent to the informational hearing, that the case be submitted to the Court's regular docket and that the order designating the appeal as a special appeal be withdrawn. The appellant has filed no response to this motion. Nationwide alleges that the special appeals procedure is contrary to CR 76.12 and CR 76.14. However, an examination of those rules discloses that this Court is well within its authority and is entitled to reach dispositions by use of this method.

CR 76.12 deals with briefs filed in Kentucky appellate courts. CR 76.12(1) specifically states:

*Unless otherwise directed by the appellate court,* before any appeal is taken under submission for final disposition on the merits briefs shall be filed by the respective parties in support of and opposition to the granting of relief. [Emphasis our own.]

In the order designating the case as a special appeal, the parties were specifically advised that pursuant to CR 76.12 briefs would not be required or entertained.

The wisdom of not requiring briefs in this case is obvious. This was an appeal by the plaintiff from the granting of a summary judgment for the defendant. Full memoranda had been filed in the trial court. Any new authority could have been, and was, cited to us at the informational hearing. Briefing on the appellate level would consist of adapting the trial court memoranda to a form suitable for our Court, and in truth, nothing of substance would be gained, and the rendering of a decision would be delayed.

The appellee argues the case is not suitable for handling by this panel because of the "lengthy chronology of facts," and insists that a "detailed recitation of facts with reference to specific pages in depositions" would aid in our disposition of the case. It is sufficient to say that we have read the record, including the depositions and exhibits attached thereto, and are duly impressed by the chronology of events. Furthermore, we were able to discern, without difficulty, the salient procedural and substantive facts without reference by the parties to their location in the record. In short, the rule was complied with and judicial economy was served by use of the special appeals procedure.

■ As an additional basis for challenging the special appeal procedure, the appellee relies on CR 76.14 in general and CR 76.14(7) in particular. The general rule deals with the prehearing conference and court-supervised settlement procedure. Any conferences held pursuant to this rule are conducted by only one staff member of this Court, either a judge or a conference attorney appointed by the Chief Judge. CR 76.14(7) states that the purpose of the conference is to consider the possibility of settlement, narrowing the issues, reducing the record, setting briefing time, or any other matters which may aid in the handling or disposition of the case.

The appellee simply glosses over the fact that the case was heard by a three-judge panel and not by one staff member of this Court. In fact, the order designating the case as a special appeal specifically stated that a prehearing conference would *not* be held. Simply stated, the informational hearing conducted by the three-judge panel is not controlled by this rule.

■ The order designating the case as a special appeal suspended oral argument, *see* CR 76.16(1), and in its place set an informational hearing. Such a hearing is along the lines of a round-table discussion. The Court concisely states its understanding of the facts, the issues and the controlling authority. Counsel for the appellant is then given an opportunity to completely explain how his party was allegedly mistreated in the trial court, to clarify the issues or to distinguish his case from the controlling authority. Counsel for the appellee is given an opportunity to respond fully. There are no arbitrary time limits, and so long as counsel's comments are pertinent, each party will be granted his full say. This case in particular ran in excess of the time it would have been allotted had oral argument been granted. There was a thorough exchange between counsel for the litigants, and all members of the special appeals panel took an active part in the discussion. As a result this panel is satisfied that it has a firm grasp on the facts, issues and authorities controlling in this case upon which briefs and formal oral argument could not improve.

Section 115 of the Kentucky Constitution provides that the parties have the right to

an appeal "upon the record." It also provides that "procedural rules shall provide for expeditious and inexpensive appeals." In this case we had the entire record compiled below and believe the parties' rights to have been satisfied and protected by the special appeals procedures. It is therefore ORDERED that the appellee's motion is DENIED.

■ Considering now the substantive issues before us, we find no material issues of fact to be determined concerning the issue of whether coverage was owed by Nationwide. We believe the trial court erred, however, as a matter of law in its interpretation of the policy's exclusion to deny coverage. There are two cardinal principles which apply to the construction of insurance contracts: "[T]he contracts should be liberally construed and all doubts resolved in favor of the insured," *Davis v. American States Ins. Co.*, Ky.App., 562 S.W.2d 653, 655 (1977), *Wolford v. Wolford*, Ky., 662 S.W.2d 835 (1984); and, more importantly to this case, "[E]xceptions and exclusions should be strictly construed to make insurance effective." *Davis, supra*. *See also Tankersley v. Gilkey*, Ky., 414 S.W.2d 589 (1967).

■ As seen in its letter to Gibbs denying coverage and representation, Nationwide interpreted the exclusionary endorsement to preclude any liability on its part when the truck was being used in *any* business. When asked by this Court under what circumstances it would be liable under the policy, the appellee's attorney responded that Gibbs would have been covered if, for example, he had been going to the local supermarket for a loaf of bread. (One can only wonder how many truckers drive their tractor-trailers to do the family marketing and how many insurers write business vehicle liability policies and, by endorsement, attempt to exclude all business use from the parameters of coverage.) This interpretation of the exclusion provision, however, is clearly not justifiable

from the plain language it contains, nor certainly from a consideration of the entire policy. The policy is designed to cover business vehicles; the exclusion makes no distinction between personal and business use of the vehicle covered. Instead, it distinguishes and excludes the activity of carrying property or using the vehicle for the business of a third-party lessee. When, as in the instant case, the insured is either deadheading or "bobtailing," that is, not pulling anything with his tractor, and is not using his vehicle for the benefit of the lessee, the exclusion is not applicable. It is for such a situation Gibbs obtained the policy and the situation for which deadhead coverage is designed. *See Ayers v. Kidney*, 333 F.2d 812, 813 (6th Cir.1964).

The appellee also relies on the case of *St. Paul Fire Insurance Co. v. Frankart*, 45 Ill.App.3d 29, 3 Ill.Dec. 322, 358 N.E.2d 720 (1976), to support the trial court's determination that it owed no coverage to Gibbs. The insurance policy in that case contained a policy exclusion identical to the one in the policy issued to Gibbs. Frankart, the owner/operator of a tractor-trailer, was involved in an accident after hauling a load for his lessee, Wilson Freight Company, and when returning with no cargo to Wilson's terminal. The issue therein was whether Frankart's vehicle was being used for Wilson. Relying on *American Transit Lines v. Smith*, 246 F.2d 86 (6th Cir.1957), which held that both the journey and the return journey are part of the same trip, the Illinois appellate court held that Frankart was "carrying on the activity of Wilson" which fell within the exclusion endorsement of Frankart's policy.

■ This case is distinguishable from the one before us as, unlike Frankart, Gibbs had not been hauling a load for his permanent lessee, Watkins. Had he been dispatched to Houston by Watkins it might be reasonable to conclude that Gibbs was using his truck in the business of Watkins on his return. However, Gibbs had not gone to Houston on business for Watkins

and thus it would be unreasonable to conclude he was on Watkins' business at the time of the collision. Nationwide's reliance on *Home Indem. v. St. Paul Fire & Marine Ins.*, Ky.App., 585 S.W.2d 419 (1979), is also misplaced as the insurer of the owner/operator in that case conceded the correctness of the determination that it owed coverage, the issue being one of apportionment among the various insurers involved.

If Watkins, or other lessor, was always liable as a matter of law for Gibbs' negligence, Gibbs would have no need for the protection for which he paid his premium to Nationwide. However, as the *Frankart* case *supra* recognized, the carrier-lessee is not always liable for its drivers. Gibbs' activity was not excluded by the endorsement, and the trial court's determination to the contrary is reversed.

That Nationwide has a duty to defend Gibbs is clear as a matter of law. The duty to defend is an important and distinguishable part of the contract as recognized by our Supreme Court thusly in *Wolford v. Wolford, supra:* "The defense clause in the contract is a contractual right of the insured for which he has paid a premium, regardless of other insurance and of any primary or excess coverage." *See also, Ursprung v. Safeco Insurance Company of America*, Ky., 497 S.W.2d 726 (1973), and *O'Bannon v. Aetna Cas. & Sur. Co.*, Ky., 678 S.W.2d 390 (1984). Thus, even if Nationwide believed in good faith that it owed no coverage, it owed Gibbs a defense in the tort action brought by Grimes, at least under a reservation of rights. That Gibbs did not hire an attorney and allowed a default to be taken are risks Nationwide took in failing to come to his defense. As Gibbs is entitled to recover "all damages naturally flowing from the breach," *Eskridge v. Educator and Executive Insurers*, Ky., 677 S.W.2d 887 (1984), the matter must be remanded for a determination of what those damages are.

Lastly, we believe the trial court erred in dismissing the appellant's bad faith claim. This claim was not predicated upon Nationwide's failure to settle, but rather on its failure to defend and to deal with its insured in good faith. The amount of the judgment entered against Gibbs has no bearing on these claims.

As in *Feathers v. State Farm Fire & Cas. Co.*, Ky.App., 667 S.W.2d 693, 696 (1983), this case involves allegations of "substantial wrongs committed against a clearly protected interest and rights." Nationwide asserts it declined to defend Gibbs on the reasonable belief that neither coverage nor a duty to defend was owed. This is a fact issue for the jury to decide.

At the informational hearing the attorney for Nationwide argued that the recent case, *Blue Cross and Blue Shield of Ky. v. Whitaker*, Ky.App., 687 S.W.2d 557 (1985), supports the trial court's dismissal of this claim. The appeal in that case, however, was taken after a trial on the bad faith claim and after the plaintiffs had an opportunity to fully develop their claim. This Court determined that the insurer's failure to learn of its mistake upon which it based its denial of benefits to not be so "dilatory as to constitute bad faith," and that "absent some proof" that the insurer acted "intentionally, willfully or in reckless disregard of its insured's rights," it could not be charged with bad faith. *Id.*, p. 559. Although all the facts relating to the bad faith claim in the instant case have yet to be developed due to the summary deposition of the matter, we believe a jury could infer from the timing of the February, 1983 letter alone a wanton disregard of Gibbs's rights. Clearly then there are material issues of fact concerning this claim which must be remanded for trial.

The judgment of the Kenton Circuit Court is reversed and remanded for proceeding not inconsistent with this opinion. Further, pursuant to 2(a) of the order designating the case as a special appeal, the

application of CR 76.20 and CR 76.38 as well as other appropriate rules of civil procedure for further appellate steps, are reinstated effective the date of this opinion.

All concur.