**KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Movant,**

v.

**Walter McKINNEY, Administrator of Diana Lynn McKinney Reed Estate, Walter McKinney, Administrator of Infant Reed Estate, and Walter McKinney, Individually, Respondent.**

No. 90–SC–000821–DG.

Supreme Court of Kentucky.

May 14, 1992.

E. Patrick Moores, R. Craig Reinhardt, Fowler, Measie & Bell, Lexington, for movant.

Thomas K. Herren, Glover, Herren & Adams, Lexington, for respondents.

DAVID L. YEWELL, Special Justice.

This is a review of the decision of the Court of Appeals which upheld a judgment of the Jessamine Circuit Court that found uninsured motorist insurance coverage (Kentucky Farm Bureau Mutual Insurance Company) was applicable and payable to the estates of Diana Lynn McKinney Reed and her unborn infant child. Diana was struck and killed August 7, 1984, as she was flagging on-coming traffic around the scene of a disabled vehicle she had just exited. The rear of this vehicle was obstructing southbound traffic on Kentucky Highway 39, a public highway in Jessamine County, Kentucky.

The sole issue in this review requires an interpretation of the standard Kentucky uninsured motorist insurance policy definitional terms "Insured" and "Occupying." Specifically, under the facts of this case, at the time they were struck and killed by an uninsured motorist, were Diana and her unborn child "occupying" the insured vehicle and thus entitled to be covered as insureds under the uninsured motorist insurance coverage endorsement of the applicable policy? The term "occupying" is defined in the policy as meaning "in or upon or entering into or alighting from, with permission of the owner." This issue has not been directly considered previously by this Court in the context of an uninsured motorist insurance policy endorsement.

## FACTS

In Jessamine Circuit Court, the parties entered into a Stipulation of Facts and Evidence. These facts are crucial to our review and must be recited:

1. That judgment for the wrongful death of Diana Lynn McKinney Reed to her estate, by and through the Administrator, Walter McKinney, would be in excess of $25,000.00, the liability limit per person of the uninsured motorist coverage in issue;

2. That judgment for the wrongful death of "Unborn Infant" Reed to the estate, by and through the Administrator, Walter McKinney, would be in excess of $25,000.00, the liability limit per person of the uninsured motorist coverage in issue;

3. That on August 7, 1984, prior to being struck by the motorcycle, Diana McKinney Reed, a 26 year old resident of Jessamine County, Kentucky, was operating a pickup truck on Kentucky Highway 39 in Jessamine County;

4. That Mrs. Reed was carrying her eight and one-half month term unborn infant;

5. That the pickup truck was owned by Charles Reed, father of Diana's husband, Doug Reed;

6. That Kentucky Farm Bureau Mutual Insurance Company had the insurance coverage on the truck, including uninsured motorist coverage;

7. That Doug Reed and Diana McKinney Reed did not reside in the "household" of Charles Reed on August 7, 1984;

8. That Mrs. Reed attempted to turn the truck into their property, but the right front wheel slid off of the side of their driveway into a culvert, and the vehicle became stalled or stuck;

9. That the bed of the truck was obstructing the southbound portion of the road;

10. That Mr. Reed asked Mrs. Reed to go up the roadway and attempt to warn motorists of the obstruction (bed of the truck in the roadway);

11. That Mrs. Reed left her purse and other belongings in the truck and proceeded up the roadway;

12. That motorists had passed Mrs. Reed, and she had been successful in waving to those persons to warn them of the obstruction in the road;

13. That Mrs. Reed was carried after the impact in excess of 90 feet in a southbound direction back toward the vehicle from which she had departed;

14. That Mrs. Reed was between 130 and 200 feet away from the truck from which she had departed at the time of the impact;

15. In addition, the Kentucky Farm Bureau insurance policy in issue has been filed as a Exhibit to this review. Therein appears the Uninsured Motorist Coverage Endorsement, UM–1 (10–66), which provides insuring agreements for damages incurred by bodily injury caused by an uninsured motorist. Essential to our examination are the specific definitions within this particular policy which are as follows:

II. DEFINITIONS

*"Named Insured"* means the person or organization named in Item I of the declaration, and if such person is an individual, also includes his spouse if a resident of the same household.

*"Insured"* means (1) the named insured and, if the named insured is an

individual or husband and wife, a relative; (2) any other person while occupying an insured automobile; and (3) any person, with respect to damages he is entitled to recover because of bodily injury, to which this endorsement applies, sustained by an insured under (1) or (2) above.

*"Relative"* means a person related to the named insured by blood, marriage or adoption who is a resident of the same household.

*"Occupying"* means in or upon or entering into or alighting from, with permission of the owner.

This uninsured motorist coverage results from the language of KRS 304.20–020 which mandates that such insurance be provided in automobile liability or motor vehicle liability insurance policies in Kentucky, subject, however, to rejection in writing by the named insured.

Upon these facts, judgment was entered in Jessamine Circuit Court against Farm Bureau in the sum of $50,000.00, that being the full uninsured motorist insurance coverage purchased by Charles Reed for the truck that Diana had been operating and then departed which was found to be applicable to and provide coverage for the stipulated damages to her estate and that of her unborn infant child.

## HOLDING

For the reasons hereinafter discussed, we AFFIRM the September 29, 1990, opinion of the Court of Appeals and find that Diana and her unborn child were insureds under the Kentucky Farm Bureau insurance policy as they were "occupying," for uninsured motorist insurance purposes, the insured pickup truck at the time they were fatally injured.

Neither Diana nor her husband, Doug Reed, was the "Named Insured" on the automobile insurance policy. They did not own the truck nor did they reside within the household of Charles Reed who was the actual title owner of the truck and the "Named Insured" in the policy which insured the truck. If they are to be "Insured" under the policy, they must fall within the definition this Court now gives to the phrase "(2) any other person while occupying an insured vehicle." Thus, we are asked to give our interpretation to the word "occupying" and state whether it should be narrowly or broadly construed, giving consideration to the present facts and all applicable existing law on this subject.

Interestingly, KRS 304.20–020 requires uninsured motorist coverage against loss for "bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle." The issue of whether or not the more narrow insuring agreement language of the policy meets the broader requirements of KRS 304.20–020 was not raised by the pleadings or litigated at any stage of this action. The statute appears to require broad coverage for persons damaged by one's "ownership, maintenance or use" of a motor vehicle while the policy language seems to provide coverage for such persons as Diana, under a more narrow approach, and only when she is found to be "occupying" the vehicle.

■ When faced with the necessity of construing such statutory and contractual language, we must look to prior pronouncements of any policy by which such insurance contracts will be interpreted by the courts of Kentucky. In so doing, we find that two cardinal principles apply: "(1) the contract should be liberally construed and all doubts resolved in favor of the insureds; and, (2) exceptions and exclusions should be strictly construed to make insurance effective." *Grimes v. National Wide Mutual Ins. Co.,* Ky.App., 705 S.W.2d 926 (1985); *Davis v. American States Ins. Co.,* Ky.App., 562 S.W.2d 653, 655 (1977), *Wolford v. Wolford,* Ky., 662 S.W.2d 835 (1984); and *Tankersley v. Gilkey,* Ky., 414 S.W.2d 589 (1967).

Additionally, the authoritative research and writing of Professor Alan I. Widiss on the specific issue of when a person is "occupying" an insured vehicle is most helpful, *Uninsured and Underinsured Motorist Insurance,* Second Edition, Volume

One, see pages 189–228, Chapter 5. As Professor Widiss explains, uninsured motorist insurance which provides coverage for persons who are insured while "occupying" an insured vehicle are usually identified as: "Clause (b)" or "Clause (2)," and this class of covered persons is generally known as "Clause (b)" insureds (also sometimes referred to as Clause II, Class II, Class (2) or Class (b) insureds), page 189. As in *Grimes, supra,* when viewed as a group, courts generally employ expansive interpretations of insurance policy coverage terms to provide indemnification for persons engaged in a task related to the use, operation or maintenance of an insured vehicle even though they were not upon, entering into or alighting from an insured vehicle, page 204. "It is now evident that when this aspect of the uninsured motorist insurance terms is at issue, judges throughout the nation will employ a variety of approaches that result in sustaining the claims of injured persons who are either in proximity to an insured vehicle or engaged in some activity related to the use of an insured vehicle," page 204. "Even when a claimant is not in physical contact with an insured vehicle, coverage interpretations have been extended when the person's activities in proximity to the vehicle are consistent with the policy and principles of interpretation accorded safety responsibility legislation and statutorily mandated uninsured motorist coverage," page 204. "Conversely, when a claimant was found not to be engaged in an activity "directly related to the use or maintenance" of an insured vehicle just prior to the accident, and, was not in immediate proximity to an insured vehicle, courts have frequently denied coverage," page 204.

■ Movant Farm Bureau argues in this case that Diana and her unborn child, as "Clause (II)" insureds, should be provided no uninsured motorist insurance coverage because they were not physically in, upon, entering into or alighting from the truck at the moment they were struck and killed. Using the factors of time and distance, Farm Bureau asserts that Diana had severed her relationship with the truck when she left her zone of safety and undertook an activity arguably not reasonably incidental to her "alighting from" the truck. Emphasizing the fact that Diana was 130–200 feet away from the truck, it asserts that she became a pedestrian not engaged in a transaction essential to the use of that truck, much like a third party beneficiary to an insurance contract and one who under those circumstances could not reasonably have expected to be a covered person for motor vehicle insurance purposes.

We believe, however, that Kentucky should adhere to its stated policy of liberally construing insurance contracts in favor of the asserted "insured" to provide insurance coverage and thereby make insurance effective, *Grimes, supra.* In our present case, while Diana was physically outside and away from the disabled vehicle she formerly occupied, this record does not reveal any act she took which was not directly connected to the disabled insured vehicle which at the very moment she was struck was creating an actual safety hazard upon that public highway in Jessamine County, Kentucky. She was actively engaged in a safety activity essential to the use of the insured truck and was attempting to carry out the reasonable act of protecting not only the insured disabled vehicle, but also all other persons and vehicles using that highway on that particular occasion. Perhaps if no accident had occurred on that occasion, Farm Bureau would have applauded Diana's efforts in the prevention of an accident for which it might have been liable for payment of damages due to the insured truck's creation of a dangerous situation in blocking the southbound traffic of that highway.

Unquestionably, Diana's departure from the disabled truck was temporary as she left her purse and personal belongings therein when she proceeded up the roadway. She was not a pedestrian out for a stroll and her presence at the point of impact was directly caused and necessitated by the disability of the insured vehicle. These facts satisfy the "nexus" or causal relationship required by many courts when coverage is granted to injured persons and

interpretation is given to the term "occupying" under uninsured insurance contracts.

■ We now join with other jurisdictions which employ expansive interpretations to provide uninsured motorist insurance coverage for persons who have been occupants of an insured vehicle. In the spirit of *Grimes, supra,* we find that the four criteria established by *Rau v. Liberty Mut. Ins. Co.,* 21 Wash.App. 326, 585 P.2d 157 (1978), represent a reasonable method of analysis which should be applied to Kentucky cases involving the interpretation of the term "occupying" in uninsured motorist insurance policy language. These criteria are:

(1) There must be a causal relation or connection between the injury and the use of the insured vehicle;

(2) The person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) The person must be vehicle oriented rather than highway or sidewalk oriented at the time; and,

(4) The person must also be engaged in a transaction essential to the use of the vehicle at the time, id. at 162.

We also find persuasive the interpretation given to the term "occupying" in the cases of *Hartford Accident & Indemnity Co. v. Booker,* 140 Ga.App. 3, 230 S.E.2d 70 (1976), *Stevens v. USF & G Co.,* 345 So.2d 1041 (Miss.1977), *Contrisciane v. Utica Mutual Ins. Co.,* 312 Pa.Super. 549, 459 A.2d 358 (1983), *DeStefano v. Oregon Mut. Ins. Co.,* 762 P.2d 1123 (Utah App.1988), *Estate of Cepeda v. United States Fidelity & G. Co.,* 37 A.D.2d 454, 326 N.Y.S.2d 864 (1971), *Smith v. Girley,* 260 La. 223, 255 So.2d 748 (1971), *MVAIC v. Oppedisano,* 41 Misc.2d 1029, 246 N.Y.S.2d 879 (1964), *Moherek v. Tucker,* 69 Wis.2d 41, 230 N.W.2d 148 (1975), *Nelson v. Iowa Mutual Insurance Company,* 163 Mont. 82, 515 P.2d 362 (1973) and *General Acc. Ins. Co. of America v. Olivier,* 574 A.2d 1240 (R.I. 1990).

Clearly, under the facts presented in this action, Diana met all four criteria. The decision of the Court of Appeals and the judgment of the Jessamine Circuit Court are hereby AFFIRMED.

STEPHENS, C.J., and COMBS, LAMBERT and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion in which SPAIN, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The narrow question presented is whether Diana Lynn McKinney Reed fit the description of a person "occupying an insured automobile" at the time she was struck and killed on April 7, 1984. That term is defined in the Uninsured Motorist Coverage Endorsement of the Kentucky Farm Bureau Automobile Policy as follows:

" 'Occupying' means in or upon or entering into or alighting from, with permission of the owner."

At the particular point in time when Diana was struck, she stood 130–200 feet away from the vehicle, which was in a disabled condition, flagging on-coming traffic in an effort to avoid a collision. While surely her activity was "vehicle oriented," and surely there was a "causal relation or connection between the injury and the use of the insured vehicle," it is equally certain that her position and activity did not constitute "occupying an insured vehicle" as defined in the policy. The question here is whether "occupying" is synonymous with "use of the insured vehicle," and the answer is it is not. The answer lies in understanding that, unlike liability coverage, the premise underlying uninsured motorist coverage is to protect *persons* insured rather than to insure vehicles against loss caused by their *use.*

The Majority Opinion is inconsistent in stating on the one hand that "Diana was physically outside and away from the disabled vehicle she formerly occupied," but on the other hand that her position and activity should be classified as occupying because "this record does not reveal any act she took which was not directly connected to the disabled insured vehicle."

Accepting that her activities were "directly connected to the disabled insured vehicle," nevertheless it is a contradiction in terms to define Diana's status as that of a *former* occupant and then classify her as an occupant. The fact is that Diana was not "in," nor "upon," nor "entering into," nor "alighting from" the disabled vehicle when she was struck, and no amount of legal legerdemain, no matter how well intended, can fit her within the definition of "occupying." This is the *sina qua non* for Diana, who was not a person insured or a member of the insured's household, to qualify as an additional insured within the uninsured motorist coverage of this policy.

The Majority Opinion appears to justify rewriting the policy definition of the term "occupying" on grounds of a public policy analysis derived from KRS 304.20–020, buttressed by material from Professor Alan Widiss' treatise on *Uninsured and Underinsured Motorist Insurance.* The Majority Opinion states "[t]his uninsured motorist coverage results from the language of KRS 304.20–020 which mandates that such insurance be provided in automobile liability ... policies ..., subject, however, to rejecting in writing by the named insured." While I respect both the general principles stated in the Majority Opinion and Professor Widiss' reputation in the field, I find nothing in the statute to get us beyond the policy language. A case such as *Hartford Accident & Indemnity Co. v. Booker,* 140 Ga.App. 3, 230 S.E.2d 70 (1976), cited as "persuasive" in the Majority Opinion, imposing coverage where the injury is causally related to "use" even though such "use" would fall beyond a reasonable application of the term "occupying," is distinguished from this one by the difference in statutory language. The Georgia statute in the *Booker* case required coverage for "any person who *uses,* with the consent, express or implied, of the named insured, the motor *vehicle to which the policy applies.*" *Id.* 230 S.E.2d at 72 (emphasis added). The Kentucky Uninsured Motorist Statute has no such statutory mandate.

When KRS 304.20–020 is analyzed carefully, what it requires is that when "automobile liability" policies are sold "insuring against loss ... suffered by any person arising out of the ownership, maintenance or use of a motor vehicle," the insurer must also provide the policyholder uninsured motorist insurance unless the policyholder shall reject the coverage. The words "ownership, maintenance or use of a motor vehicle" in KRS 304.20–020 are used as part of the description of the term "liability policy"; they do not describe who must be extended uninsured motorist coverage beyond those persons specifically insured by the liability policy. The statute does not require that uninsured motorist coverage must extend to any person involved in the use of the vehicle in any form or fashion. If it did, I would agree with the result reached in the Majority Opinion.

Paraphrased for present purposes, KRS 304.20–020 provides:

> No automobile liability policy shall be delivered in this state unless coverage is provided therein for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured vehicles.

The statute does not say that persons other than policyholders must be insured—only that, unless rejected, uninsured motorist coverage must be provided to the "persons insured." It is a separate type of insurance added on to the liability policy. Who is insured is left to the policy definitions.

Nor does the Motor Vehicle Reparations Act (MVRA), KRS 304.39–010, *et seq.,* which defines who must be insured for basic reparations benefits (BRB) and for tort liability, define who must be insured for uninsured motorist protection. KRS 304.39–080(5) requires "security for payment of tort liabilities, arising from maintenance or use of the motor vehicle," and KRS 304.39–110 provides the "required minimum," i.e., the policy limits, for "payment of tort liabilities," and elsewhere in the MVRA KRS 304.39–030 provides for the right to BRB "from injury arising out of maintenance or use of a motor vehicle." But, just as with the Uninsured Motorist Statute, nowhere in the MVRA is there statutory language mandating that the in-

surer must extend uninsured motorist coverage to persons other than an insured simply because their activity may be considered connected to the use of the vehicle. Thus compulsory insurance against tort liability for losses caused by the *use* of the vehicle is mandated by the MVRA, but no statute mandates uninsured motorist protection for the user unless the user falls within the policy definition of an insured person.

In sum, the key question in this case is not whether this tragic accident was one "arising out of the ownership, maintenance or use of a motor vehicle." In KRS 304.-20–020 that phrase is part of the description of the "automobile liability or motor vehicle liability policy" which triggers the offer of uninsured motorist coverage; it does not describe the scope of the uninsured motorist protection which must be offered along with the automobile liability policy. The statute requires no uninsured motorist protection for *former* occupants of the vehicle. It requires uninsured motorist protection for occupants as such only if they qualify as "persons insured" under the policy definitions. If the deceased (Diana) is to qualify for uninsured motorist protection under this policy, she must do so by fitting within the extended definition of persons insured found within the contractual language; she must meet the policy definition of "occupying" which then would qualify her as an insured. Unfortunately, she stepped considerably beyond that point.

SPAIN, J., joins this dissent.