**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0683n.06

**Case No. 20-5601**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Dec 07, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| WALTER J. SMITH, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| UNION INSURANCE COMPANY | ) | |
| | ) | O P I N I O N |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE:     COLE, Chief Judge; DONALD and READLER, Circuit Judges.

COLE, Chief Judge.  Plaintiff Walter Smith appeals the district court's summary judgment grant, arguing that the court erred in finding that he was not occupying an insured vehicle at the time of the accident and that he is not entitled to basic reparation benefits.  Considering the facts most favorably to Smith and respecting Kentucky's broad definition of "occupying," we conclude the trial court correctly determined that Smith is not entitled to basic reparation benefits but erred in determining as a matter of law that Smith was not "occupying" an insured vehicle.

## I.  BACKGROUND

Smith was hanging TV cables along with a co-worker, Champlin, in the course of his employment with Next Generation Management.  Smith parked a company truck on one side of the road and Champlin parked on the other.  They connected a cable to Champlin's truck, and

Champlin prepared to drive the truck across the road so that Smith could hang the TV cable. Smith stood in the road, about ten feet away from his truck and twenty feet from Champlin's truck, to stop oncoming traffic. While he was controlling traffic, an unknown driver hit Smith.

Smith sought uninsured motorist coverage and basic reparation benefits from defendant, Union Insurance Company, which had issued Smith's employer an insurance policy. Plaintiff and defendant filed cross-motions for summary judgment. The district court granted defendant's motion for summary judgment and Smith now appeals.

## II. ANALYSIS

We review the district court's grant of summary judgment *de novo*, interpreting all evidence in the light most favorable to the non-moving party and drawing "all justifiable inferences" in its favor. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Kentucky's substantive law applies in this diversity case. In Kentucky, the construction of an insurance contract provision is a question of law for the court unless there are disputed facts. *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994) (citing *Perry's Adm'x v. Inter-Southern Life Ins. Co.*, 71 S.W.2d 431, 433 (1934)).

### A. Uninsured Motor Coverage

The insurance policy covers "anyone 'occupying' a covered 'auto.'" No one disputes that the truck Smith was driving on the day of the accident was a "covered 'auto,'" as was the truck Champlin was driving. But the parties disagree about whether Smith was "occupying" a covered vehicle at the time of the accident. The insurance policy defined "occupying" as "in, upon, getting in, on, out or off."

In addition to the policy language, Kentucky case law, notably *Kentucky Farm Bureau Mutual Insurance Co. v. McKinney*, controls the meaning of the term "occupying." 831 S.W.2d 164 (Ky. 1992). In *McKinney*, the Kentucky Supreme Court determined that Mrs. Reed was "occupying" the insured vehicle after she walked over 130 feet from the truck to warn drivers that the truck was disabled and obstructing the road. *Id.* at 165.

The Kentucky Supreme Court determined that state law and public policy mandated that "occupying" be interpreted more expansively than the insurance policy's definition ("physically in, upon, entering into or alighting from") would otherwise provide. *Id.* at 167. The Kentucky Supreme Court stressed the importance of "adher[ing] to [Kentucky's] stated policy of liberally construing insurance contracts in favor of the asserted 'insured' to provide insurance coverage and thereby make insurance effective." *Id.*

As a federal court sitting in diversity, we must respect Kentucky's substantive law and interpret "occupying" broadly even if the insurance policy definition would, on its face, appear narrowly defined. This extends to our interpretive methods. The Kentucky Supreme Court decided to "join with other jurisdictions which employ expansive interpretations to provide uninsured motorist insurance coverage." *Id.* at 168. We must follow the state's lead.

This begins with applying the state's four-part test "which should be applied to Kentucky cases involving the interpretation of the term 'occupying' in uninsured motorist insurance policy language." *Id.*

1) There must be a causal relation or connection between the injury and the use of the insured vehicle;

2) The person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

3) The person must be vehicle oriented rather than highway or sidewalk oriented at the time; and,

4) The person must also be engaged in a transaction essential to the use of the vehicle at the time

*Id.*

While the parties agree that these four factors govern, they disagree about whether Smith meets each factor. This case is also complicated by the fact that there were two covered vehicles at the scene of the accident. In most cases, there is only one covered vehicle so the analysis centers on the question of whether the plaintiff was "occupying" an insured vehicle, even if it was not the vehicle he intended to drive. This unique situation leads us to a peculiar question: By flagging traffic to allow Champlin to drive across the street, was Smith "occupying" that insured vehicle under the expansive test set forth in *McKinney*? We find that he was.

First, Smith's injury was connected to the use of the insured vehicle. Smith was injured while flagging traffic to allow Champlin's truck to cross the road. But for the use of Champlin's truck, which was an insured vehicle, Smith would not have been injured. This factor is squarely resolved by the same facts in *McKinney*, where the plaintiff's injuries were sustained while warning motorists of the road obstruction caused by the insured vehicle. 831 S.W.2d at 165. And unlike in *Baker*, where the plaintiff was injured in an incident unrelated to her vehicle while she was walking to collect an unknown object in the road, Smith's injury was connected to ensuring the safety of the insured vehicle. *Baker v. Christy*, No. 7:19-cv-17-EBA, 2019 WL 5212898, at *4 (E.D. Ky. Oct. 16, 2019).

Second, Smith was in reasonably close geographic proximity to the bucket truck. Smith was about twenty feet away from the truck as it crossed the road. This meets the reasonable proximity test given the Kentucky Supreme Court found that a distance of 130 to 200 feet was close enough to meet the second prong in *McKinney*. 831 S.W.2d at 167. Therefore, the district court correctly found that this factor was met.

Third, Smith was "vehicle-oriented" at the time of the accident. The Kentucky Supreme Court found that Reed was "vehicle-oriented" when she was "was actively engaged in a safety activity essential to the use of the insured truck and was attempting to carry out the reasonable act of protecting not only the insured disabled vehicle, but also all other persons and vehicles using that highway on that particular occasion." *McKinney*, 831 S.W.2d at 167. Likewise, in *Chandler*, the plaintiff was vehicle-oriented when he was flagging traffic to warn drivers that the insured truck was blocking the road to allow plaintiff and his co-workers to install road signs. *Chandler v. Am. Guarantee & Liab. Ins. Co.,* No. CIV.A. 04-226-DLB, 2005 WL 2250836, at *5 (E.D. Ky. Sept. 15, 2005). There the court found that "[i]n the seconds before impact [plaintiff's] attention, at least, in part, was directed to the vehicle and its position in the lane of travel." *Id.* That is in equal measure true here, where the district court acknowledges that "Smith's focus was on Champlin's truck." Indeed, *Chandler* is nearly identical to the present case in every relevant respect, and there the court found that Chandler was occupying the work truck and granted his motion for summary judgment. *Chandler*, 2005 WL 2250836 at *8. Defendant cites a case in which a police officer directing traffic was found to be highway-oriented rather than vehicle-oriented. *Gill v. Specialty Nat. Ins.*, No. 2005-CA-000694-MR, 2006 WL 658900, at *2 (Ky. App. Mar. 17, 2006). But in *Gill*, the police officer was doing police work that was wholly unrelated to his vehicle. *Id.* Here, like *McKinney* and *Chandler*, and unlike *Gill*, Smith was flagging traffic to protect and secure the insured vehicle.

Fourth, flagging traffic was essential to the operation of the insured truck. The district court acknowledges that "flagging traffic was essential to Champlin's vehicle. Similar to *Chandler*, Smith was flagging traffic to help Champlin safely cross from the left side of the road to the right." Despite this, the district court cites *Hall*, where plaintiff claimed that he was

"occupying" his own vehicle after he left it to render aid at the scene of an accident. *Greenwich Ins. Co. v. Hall*, No. 11-66-ART, 2012 WL 5868915, at *2 (E.D. Ky. Nov. 20, 2012). In *Hall*, helping an injured motorist, though the right thing to do, was not essential to plaintiff's operation of his own vehicle, and therefore he was not covered under the insurance policy on his vehicle. *Id.* Here, by contrast, Smith's action in flagging traffic was essential to the safe operation of the insured bucket truck, just like in *McKinney* and *Chandler*.

Although Smith meets all the requirements to occupy an insured vehicle under Kentucky law, the district court granted summary judgment in favor of the defendant. Rather than analyzing the factors with regard to the bucket truck that Champlin was driving, the district court found that Smith was not occupying the bucket truck that he had parked on the other side of the street. This oversight is understandable—it is perhaps not intuitive that one could occupy a vehicle that someone else is actively driving. But this is precisely what Kentucky law provides for. Nothing in the expansive *McKinney* test requires that the plaintiff be the vehicle's driver. Indeed, passengers are regularly covered, as are unrelated pedestrians if they can show that they meet the four-part test. *See, e.g.*, *Jackson v. State Farm Fire & Cas. Co.*, No. 2014-CA-001000-MR, 2016 WL 3661910, at *4 (Ky. Ct. App. July 1, 2016) (finding that a pedestrian who was talking to the driver through the window was "occupying" the vehicle). In *Jackson*, the pedestrian did not own the vehicle, had not driven the vehicle, nor was he a passenger that day. *Id.* But because he met the four-part test in *McKinney*, the court determined that he was occupying the vehicle. *Id.* Likewise, Smith may claim to be occupying the company truck driven by Champlin.

Smith has presented enough evidence on which a trier of fact could reasonably find that he was occupying the insured vehicle. Summary judgment is not appropriate in light of the Kentucky Supreme Court's admonition that courts "should adhere to [Kentucky's] stated policy of liberally

construing insurance contracts in favor of the asserted 'insured'" and our obligation at the summary judgment stage to draw all inferences in Smith's favor. *McKinney*, 831 S.W.2d at 167.

## B. Basic Reparations Benefits

Kentucky law requires basic reparation benefits on all motor vehicles unless the insured has rejected those benefits. The insured may formally reject those benefits or will be deemed to have rejected benefits if the party does not have basic reparation insurance but has the security equivalent to that required in KRS 304.39-110 at the time of the accident. Ky. Rev. Stat. § 304.39-060.

The insurance policy held by Smith's employer does not include basic reparation insurance but provides the minimum liability limits set forth in KRS 304.39-110. Therefore, the company is deemed to have rejected basic reparation benefits under Ky. Rev. Stat. § 304.39-060(4). Accordingly, the district court did not err in finding that defendant has no obligation to pay basic reparation benefits to Smith.

## III. CONCLUSION

We affirm in part and reverse in part the district court's grant of summary judgment to Union Insurance and remand for proceedings consistent with this opinion.

**CHAD A. READLER, Circuit Judge, concurring in part and dissenting in part.**

"[W]hether a word can reasonably bear a particular meaning," Justice Scalia has colorfully explained, "is whether you could use the word in that sense at a cocktail party without having people look at you funny." *Johnson v. United States*, 529 U.S. 694, 718 (2000) (Scalia, J., dissenting). Take the word "occupying." Suppose you were regaling fellow partygoers with a story about you and a colleague working together alongside a road, having arrived in separate vehicles. As the story goes, as you began to flag traffic to allow your co-worker to drive his vehicle across the road, you were struck by an oncoming vehicle. At that time of the accident, could you plausibly claim to have been "occupying" your colleague's vehicle? If you did, your audience might well think you've had one cocktail too many.

We customarily equate the term "occupying" with some form of physical presence. And here, Walter Smith was neither physically present in his colleague's vehicle at the time of the accident, nor did he intend to be in the future. Under no sense of the term, in other words, was Smith "occupying" that vehicle. That is so whether one references the term's common understanding, the manner in which it is defined in the Union Insurance policy, or its treatment by the Kentucky courts.

Start with the dictionary. Merriam-Webster's includes several definitional variations of "occupy," including "to take or hold possession or control of," and "to reside in." *Occupy*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003). Black's Law Dictionary similarly defines "occupy" as to "seize or take possession of; to take up space; or to be in actual possession of." *Occupy*, Black's Law Dictionary (11th ed. 2019) (cleaned up). These definitions equate occupying with physical presence, and thus conform with our everyday use of the term, an important benchmark in the interpretive process. *See* Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2144 (2016) (reviewing Robert A. Katzmann, *Judging*

*Statutes* (2014)) (explaining that judges, in interpreting text, should attempt to remain faithful to the interpretation given by ordinary users of the English language); *see also United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 404 (6th Cir. 2019) ("[W]ords which have no technical meaning in law must be interpreted in light of the usage and understanding of the common man." (cleaned up) (quoting *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007))). So when we say that a person is occupying a plane seat, a lavatory, or a hotel room, we understand the person to be physically present in that space.

Admittedly, our interpretation of "occupying" today does not end with the pages of the dictionary. As we consider that term as used in a Kentucky uninsured motorists coverage policy, we must take note of the policy language, which defines "occupying" as "in, upon, getting in, on, out or off" a covered vehicle. Although this definition aligns with the general understanding that "occupying" requires physical presence, it also imports timing and spatial requirements, both narrowing and broadening the term's scope. The timing requirement narrows our ordinary understanding by creating an immediacy aspect as to physical presence; that presence must either be current, as in the person is in or upon the vehicle, or imminent. The spatial requirement then broadens our ordinary understanding of occupying; although one would not ordinarily say that a person is occupying her vehicle if she were on top of it, or in the process of entering or exiting it, the policy definition incorporates those scenarios.

We likewise must take account of the Kentucky Supreme Court's decision in *Kentucky Farm Bureau Mutual Insurance Co. v. McKinney*, 831 S.W.2d 164 (Ky. 1992). *McKinney* held that a person may "occupy" her vehicle even after she has exited it so long as there exists some sort of continued relationship to the vehicle. *Id.* at 167–68 (noting that the claimant "was physically outside and away from the disabled vehicle she formerly occupied"). To demonstrate

that manner of relationship, there must be a "causal relation" between the injury and the use of the vehicle, and the claimant, at the time of the accident must be in "reasonably close geographic proximity" to the vehicle, "vehicle oriented," and engaged in a "transaction essential to the use of the vehicle." *Id.* at 168. Employing these factors, courts applying Kentucky law have deemed one to be "occupying" her vehicle even when she is outside of it for certain purposes, for example, to warn oncoming traffic of the obstruction caused by her vehicle, *see id.*, or to flag traffic during a construction project, *Chandler v. Am. Guarantee & Liab. Ins. Co.*, No. 04-226-DLB, 2005 WL 2250836, at *5 (E.D. Ky. Sept. 15, 2005).

Yet the Kentucky courts have never reached the counterintuitive conclusion that one is "occupying" a vehicle even when she neither previously occupied nor intended to occupy the vehicle. *McKinney* understandably emphasized that its holding would only "provide uninsured motorist insurance coverage for persons *who have been occupants of an insured vehicle*." *McKinney*, 831 S.W.2d at 168 (emphasis added). And even that generous reading of "occupying" has its limits. Our now-colleague Judge Thapar, in interpreting Kentucky law while sitting on the district court, held that an individual who was injured after he left his vehicle to help a disabled vehicle was not occupying his vehicle for purposes of recovering insurance benefits. *See Greenwich Ins. Co. v. Hall*, No. 11-66-ART, 2012 WL 5868915, at *2–3 (E.D. Ky. Nov. 20, 2012); *see also Gill v. Specialty Nat'l Ins. Co.*, No. 2005-CA-000694-MR, 2006 WL 658900, at *2 (Ky. Ct. App. Mar. 17, 2006) (holding that a police officer was not occupying his vehicle as the act he was performing did not relate back to, nor was it essential to, his police vehicle). In denying coverage, Judge Thapar emphasized the fact that *McKinney* involved a claimant seeking to recover under a policy that covered the vehicle she had just recently occupied. *Hall*, 2012 WL 5868915, at *2–3 (emphasizing that "McKinney was flagging traffic around *her* disabled vehicle, not *any*

disabled vehicle"). Tellingly, the claimant in *Hall*, likely in light of *McKinney*'s limited reach, did not attempt to claim that he was in fact occupying the vehicle he was assisting.

True, one Kentucky court has held that a claimant can be deemed to be "occupying" a vehicle he had not entered, so long as he intended to do so momentarily. *Jackson v. State Farm Fire & Cas. Co.*, No. 2014-CA-001000-MR, 2016 WL 3661910, at *4 (Ky. Ct. App. July 1, 2016). After leaving a friend's apartment and preparing to walk home, Jackson came across a different group of friends in the complex's parking lot. *Id.* at * 1. Jackson's friends offered him a ride home, and he accepted. *Id.* Jackson and the driver then waited for another friend to return from her apartment before the group would depart together. *Id.* As they waited, Jackson leaned against the insured vehicle, putting his head inside the window to talk with the driver. *Id.* At that point, another vehicle accidentally struck Jackson. *Id.* Though Jackson had not previously "occupied" his friend's vehicle, as that term is ordinarily understood, because he was "in the process of entering into or in physical contact with [the] insured vehicle," coupled with his satisfaction of the *McKinney* factors, meant that he was "occupying" that vehicle for insurance coverage purposes. *Id.* at *3.

But expanding Kentucky law to impose coverage where one has never occupied (nor intended to occupy) the covered vehicle, as the majority opinion does today, has no pedigree in the Bluegrass State. That fact alone leaves the majority opinion on unsteady footing. So too does its complete disregard for the policy definition of "occupying." That language, once again, requires the insured to be "in, upon, getting in, on, out or off" the vehicle at the time of the accident. And that policy language continues to have force, even in the wake of *McKinney*. Reading that definitional language together with Kentucky case law, it follows that while *McKinney* permits an individual to be within a policy's scope while outside of a covered vehicle at the time of an

accident, that is so only where, before the accident, the individual was, or intended to be, "in, upon, getting in, on, out or off" the vehicle. *McKinney*, 831 S.W.2d at 167–68. Because Smith was never "in, upon, getting in, on, out or off" Champlin's vehicle, nor did he ever intend to be, he fails to meet the policy's definition of "occupying."

Accordingly, I would affirm the district court's grant of summary judgment. I therefore join all but Part II.A of the majority opinion.